**Michael A. MANUEL, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee,**

and

**International Marine Carriers, Incorporated, Defendant.**

No. 94–1485.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 1, 1994.

Decided March 29, 1995.

**ARGUED:** Jesse Marden Suit, III, Rutter & Montagna, Norfolk, VA, for appellant. Peter Francis Frost, Trial Atty., Civ. Div., U.S. Dept. of Justice, Washington, DC, for appellee. **ON BRIEF:** Frank W. Hunger, Asst. Atty. Gen., Helen F. Fahey, U.S. Atty., Civ. Div., U.S. Dept. of Justice, Washington, DC, for appellee.

Before RUSSELL and WILLIAMS, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

Affirmed by published opinion. Judge RUSSELL wrote the opinion, in which Judge WILLIAMS and Senior Judge CHAPMAN joined.

## OPINION

DONALD RUSSELL, Circuit Judge:

This case raises the legal question of whether a seaman on a public vessel, owned by the United States but operated by a private operating agent, can bring a claim against the agent, instead of the United States, for arbitrarily and willfully denying his requests for maintenance and cure. The choice of defendants is important because the seaman cannot seek punitive damages against the United States. We conclude that the exclusivity provision of the Suits in Admiralty Act requires the seaman to bring his maintenance and cure action against the United States.

### I.

Michael Manuel, the plaintiff, was a merchant seaman aboard the M/V CAPE FLORIDA, a public vessel owned by the United States and operated by International Marine Carriers, Inc. ("IMC"). Manuel was an employee of IMC and was injured while performing his duties as a crew member. On or about April 10, 1991, while cleaning water tubes in a fresh water cooler in the ship's engine room, he suffered back injuries while lifting the water cooler cover. Manuel was under doctor's care between April 10, 1991 and May 15, 1992, when he was released to return to work on a trial basis.

Manuel was paid maintenance (cost of room and board) and cure (medical bills) until he was found fit for duty on May 15, 1992. Manuel alleges that he continues to experience pain in his back and legs and continues to receive medical care. Manuel has not received additional maintenance and cure for his continuing injuries and medical care.

On April 8, 1993, Manuel filed suit against the United States and IMC in the United States District Court for the Eastern District of Virginia. Manuel alleged that his injuries resulted from the negligence of the defendants and the unseaworthiness of the vessel. The United States filed an answer on June 25, 1993. IMC did not file an answer, and the district court entered a default judgment against IMC. On August 26, 1993, however, the United States filed a motion for summary judgment on IMC's behalf. On September 15, 1993, Manuel moved for leave to amend his complaint to state a claim against IMC for arbitrary and willful failure to pay maintenance and cure.

The district court ordered a magistrate judge to consider the two motions. On February 3, 1994, the magistrate recommended that the district court grant the United States' motion for summary judgment on IMC's behalf on grounds that the "exclusivity" provision of the Suits in Admiralty Act (the "SAA"), 46 U.S.C. § 745, requires Manuel to bring his negligence and unseaworthiness claim against the United States and not against the agent operating the government-owned vessel. However, the magistrate also recommended that the district court grant Manuel's motion to amend his complaint. The magistrate judge concluded that Manuel, despite the SAA's exclusivity provision, could bring an action against an agent of the United States for arbitrary and willful failure to pay maintenance and cure.

On March 16, 1994, the district court, following the magistrate judge's recommendation, set aside the default judgment against IMC and granted summary judgment in favor of IMC on the negligence and unseaworthiness claim. However, the district court did not follow the magistrate judge's recommendation on Manuel's motion for leave to amend his complaint. In denying the motion to amend, the district court held that the exclusivity provision of the SAA prevents him from bringing a claim for arbitrary and willful denial of maintenance and cure against an agent of the United States.

Manuel appeals the district court's denial of its motion for leave to amend his complaint. He does not appeal the district court's granting of summary judgment in IMC's favor on the negligence and unseaworthiness claim. We affirm the district court's denial of the motion to amend.

## II.

The SAA, 46 U.S.C. §§ 741–752, and the Public Vessels Act (the "PVA"), 46 U.S.C. §§ 781–790, permit admiralty suits to be brought against the United States for causes of action arising out of the operation of vessels owned by or operated for the United States.[1] However, 46 U.S.C. § 745 also provides that:

> where a remedy is provided by [the SAA] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States ... whose act or omission gave rise to the claim.

46 U.S.C. § 745. This exclusivity provision precludes recovery against an agent of the United States operating a government-owned vessel on any claim for which the SAA or the PVA provides a remedy against the United States.[2]

Only four federal district court judges have considered whether the exclusivity provision in 46 U.S.C. § 745 precludes a seaman's claim for maintenance and cure against the private operator of a vessel owned by the United States. The first district court to consider the issue held that the seaman, despite the exclusivity provision, could sue the private operator for the arbitrary and willful failure to pay maintenance and cure. *Shields v. United States*, 662 F.Supp. 187 (M.D.Fla.1987). The district judges who have subsequently considered the issue have not agreed on whether to follow *Shields*. Compare *Manuel v. United States*, 846 F.Supp. 478 (E.D.Va.1994) (rejecting *Shields*)[3] and *Farnsworth v. Sea–Land Serv., Inc.*, 1989 WL 20544 (E.D.La. Mar. 7, 1989) (Duplantier, J.) (rejecting *Shields)* with *Henderson v. International Marine Carriers*, 1990 A.M.C. 400 (E.D.La.1989) (Feldman, J.) (following *Shields* ).

In concluding that the SAA allows a seaman to bring a maintenance and cure action

---

1. Neither the SAA nor the PVA create causes of action against the United States. Instead, they act only as a waiver of the sovereign immunity of the United States in admiralty cases. The acts merely provide the jurisdictional hook upon which to hang a traditional admiralty claim. *Williams v. Central Gulf Lines*, 874 F.2d 1058, 1059 (5th Cir.1989); *Blanco v. United States*, 775 F.2d 53, 63 n. 8 (2d Cir.1985).

2. Remedies provided by the PVA are also subject to the exclusivity provision of the SAA. 46 U.S.C. § 782.

3. The Eastern District of Virginia has also rejected *Shields* in *Fratus v. United States*, 859 F.Supp. 991 (E.D.Va.1994). *Fratus* and *Manuel* were written by the same district judge and were issued on the same day. The discussion of *Shields* in the two opinions is nearly identical.

against the private operator, the *Shields* court relied heavily on the legislative history of the exclusivity provision. As the *Shields* court explained:

> The legislative history behind [the exclusivity] provision reveals that its purpose is to protect the rights of seamen. Prior to 1950, seamen seeking to recover for the wrongful acts of agents of the United States faced an area of law which was mired in uncertainty. Many actions against private employers were dismissed, and plaintiff seamen turned to United States as a source of recovery. The seamen often found, however, that their right to sue under the SAA and PVA had become barred by the expiration of the applicable statute of limitations. This situation persisted until the Supreme Court in *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783 [69 S.Ct. 1317, 93 L.Ed. 1692] ... (1948), "[made] it plain that the agent, while liable for the negligence of its own employees, was not liable for the negligence of the civil-service masters and crews with whom the United States manned the vessels." S.R. 1782, 81st Cong., 2d Sess. (1950); 1950 U.S.Code Cong. Service, p. 4209–10.
>
> In 1950 Congress amended section 745 of the SAA to codify the exclusivity rule of *Cosmopolitan Shipping*. By adding the exclusivity rule, Congress sought to unequivocally designate the United States as the one to whom a claim for loss caused by the government's ship should be directed. [citations omitted] No longer would seamen who were injured by the negligent conduct of the captain or crew of United States vessels be victimized by legal confusion regarding their proper remedy.

*Shields*, 662 F.Supp. at 189–90.

Based on this legislative history, the *Shields* court concluded that the intent of the SAA's exclusivity provision was not to prevent a seaman from suing the private operator of a government-owned ship for the arbitrary and willful failure to pay maintenance and cure. Although the Supreme Court held in *Cosmopolitan Shipping* that seamen on a government-owned ship had to bring any claims of loss against the United

States, the *Shields* court concluded that the Supreme Court limited its holding to claims arising from the negligent conduct of the captain or crew of the government-owned ship. The *Shields* court clearly inferred that Congress, when it codified the holding of *Cosmopolitan Shipping* in 1950, also intended to limit the exclusivity rule to claims arising from the negligent conduct of the captain or crew. According to the *Shields* court, however, where a seaman sues the operator of a vessel for its arbitrary and willful failure to pay maintenance and cure, the seaman "seeks recovery [from the operator] not for the wrongful acts of its master or crew in the management of a United States vessel, but for the arbitrary and willful conduct of its insurance department in handling benefits claims." *Id.* at 190. Thus, the *Shields* court concluded that "the SAA was not designed to preclude recovery for arbitrary claims handling." *Id.*

The *Shields* court also reasoned that the language of the exclusivity provision did not prevent a seaman from suing the private operator of a government-owned ship for the arbitrary and willful failure to pay maintenance and cure. By focusing on the "by reason of the same subject matter" language of the exclusivity provision, the *Shields* court emphasized that the exclusivity provision bars an action against an agent of the United States only if it deals with the same subject matter for which the SAA provides a remedy. The *Shields* court, however, found that "arbitrary claims handling is an entirely different subject matter from the negligent conduct for which the SAA provides a remedy." *Id.* The *Shields* court thus concluded that a seaman can sue the private operator of a government-owned ship for its arbitrary and willful failure to pay maintenance and cure.

### III.

To support the validity of his proposed claim against IMC for the arbitrary and willful failure to pay maintenance and cure, Manuel relies primarily on *Shields*. The district court, however, rejected the reasoning of *Shields* and concluded that the exclusivity provision of 46 U.S.C. § 745 would bar Manuel's proposed action against IMC. In re-

viewing the district court's denial of Manuel's motion to amend, we too reject the reasoning of *Shields* and agree that the exclusivity provision would bar Manuel's claim against IMC.

## A.

We first disagree with the *Shields* court's characterization of Congress's intent in enacting the exclusivity provision. In order to shed some light on Congress's intent in amending 46 U.S.C. § 745, we undertake to provide an extensive discussion of the Supreme Court decisions that led to the 1950 amendment.

In *Johnson v. U.S. Shipping Board Emergency Fleet Corp.*, 280 U.S. 320, 327, 50 S.Ct. 118, 120, 74 L.Ed. 451 (1930), the Supreme Court held that "the remedies given by the [SAA] are exclusive in all cases where a libel might be filed under it." Although the SAA did not at that time have an express exclusivity provision, the Court concluded that the SAA "was intended to furnish the exclusive remedy in admiralty against the United States ... on all maritime causes of action arising out of the possession or operation of merchant vessels." *Id.* at 326, 50 S.Ct. at 120. The Court also recognized that, for such a cause of action, the United States is the real party of interest and, directly or indirectly, would have to pay any judgment won by the seaman. *Id.* at 326–27, 50 S.Ct. at 120. Significantly, after the *Johnson* decision, a seaman who was injured aboard a ship owned by or operated for the United States could not sue the operator of the ship even for the negligence of the operator's officers and employees.[4] In *Brady v.*

*Roosevelt Steamship Co.*, 317 U.S. 575, 578, 63 S.Ct. 425, 427, 87 L.Ed. 471 (1943), however, the Supreme Court overruled *Johnson* to the extent that it prevented a seaman from suing a private operator for the torts of its own employees. In *Brady*, a customs inspector, while boarding a government-owned vessel on his official duties, fell to his death when a rung of the ladder on which he was climbing broke. The estate of the customs inspector brought an action against the private operator of the vessel for its negligence. Although the United States owned the vessel and although the Court held that the action was a maritime tort subject to admiralty jurisdiction, the *Brady* Court allowed the estate of the inspector to bring the action against the private operator. The Supreme Court held "that there is not the slightest intimation or suggestion in the history of [the SAA] that it was designed to abolish all remedies which might exist against a private company for torts committed during its operation of government vessels under agency agreements." *Id.* at 579, 63 S.Ct. at 427.

In *Hust v. Moore–McCormack Lines, Inc.*, 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534 (1946), the Supreme Court continued to depart from the exclusivity rule. *Hust* involved a vessel operated and controlled by the United States through the War Shipping Administration during World War II. Hust, a seaman, was injured aboard the ship and brought a claim against the general agent under the Jones Act, 46 U.S.C. § 688. Under the contracts made during the war, however, the masters and crew of the ship were employees of the United States, not the general agent.[5] Nonetheless, the Supreme

---

**4.** The Supreme Court's opinion in *Johnson* resolved four separate appeals. In three of the cases, the government-owned ship was operated by the U.S. Shipping Board Emergency Fleet Corporation (the "Fleet Corp."), a public entity. In *U.S. Shipping Board Merchant Fleet Corp. v. Lustgarten*, however, a private company operated the government-owned vessel. The seaman in that case brought negligence claims against both the private operator and the Fleet Corp. Even in *Lustgarten*, where a private entity operated the government-owned vessel, the Supreme Court held that the seaman must bring his claims against the United States. The Supreme Court's holding did not turn on whether the operator of

the government-owned vessel was a public or private entity.

**5.** As the Supreme Court explained in *Cosmopolitan Shipping Co. v. McAllister:*

> At the time of the wartime requisition of the privately owned merchant fleet, the government administrative agencies concerned gave careful study to the question of whether the crews were to be employees of the shipping companies or of the United States. There were outstanding many collective bargaining agreements between the private shipping companies and the maritime unions. It was manifestly undesirable to disturb these existing

Court allowed Hust to bring his maritime tort claim against the general agent under the Jones Act even though the agent was not the seaman's employer. The Court reasoned that, unless it allowed the seaman to sue the agent, the effect would be to resurrect the exclusivity rule of *Johnson* for the duration of the war, even though *Brady* had overruled the exclusivity rule. 328 U.S. at 719–20, 66 S.Ct. at 1224–25.

The Supreme Court overruled *Hust* in *Cosmopolitan Shipping Co. v. McAllister,* 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949). As the Court explained in *Cosmopolitan Shipping:*

> The *Hust* case went on the theory that the general agents for the United States under the same standard service agreement were employers of the injured seaman, Hust, for the purposes of liability under the Jones Act. The general agent was found to be liable to the seaman [because, *inter alia,*] the overruling of *Fleet Corporation v. Lustgarten,* 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451, by *Brady v. Roosevelt S. S. Co.,* 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471, gave a seaman a right to sue under the Jones Act such general agents as were employed under contracts like Moore–McCormack's for torts committed against seamen by masters and crew. . . .

337 U.S. at 787, 69 S.Ct. at 1320. The Supreme Court concluded that *Hust* misinterpreted the *Brady* decision: "The *Brady* case decided no more, directly or by implication, than that an action could be maintained against agents of the United States at common law for the agents' own torts." *Id.* at 789, 69 S.Ct. at 1321. The Court concluded that "an agent such as Cosmopolitan, who contracts to manage certain shoreside business of a vessel operated by the War Ship-

ping Administration, is not liable to a seaman for injury caused by the negligence of the master or crew of such a vessel." *Id.* at 801, 69 S.Ct. at 1326. Overruling *Hust,* the Supreme Court held that a seaman employed by the United States cannot sue the agent managing the ship as if the agent were his employer for purposes of the Jones Act.

The *Cosmopolitan Shipping* Court, however, did not overrule *Brady* and resurrect the exclusivity rule of *Johnson.* It merely held that a seaman employed by the United States on a United States vessel could not sue the private agent managing the vessel as if the agent were the seaman's employer. *Cosmopolitan Shipping* still preserved the holding in *Brady* that a seaman could hold a private agent liable for the maritime torts of its own employees. *Cosmopolitan Shipping,* 337 U.S. at 789, 69 S.Ct. at 1321. Thus, even after *Cosmopolitan Shipping,* a seaman on a ship owned by the United States, but where a private company operated the ship and hired the masters and crew, should have been able to sue the agent for the maritime torts occurring on the ship.

Although Congress appeared to understand the limited nature of the *Cosmopolitan Shipping* holding, *see* S.Rep. No. 1782, 81st Cong., 2d Sess. (June 7, 1950), *reprinted in* 1950 U.S.C.C.A.N. 4209, 4210 (explaining that *Cosmopolitan Shipping* "[made] it plain that the agent, while liable for the negligence of its own employees, was not liable for the negligence of the civil-service masters and crews with whom the United States manned the vessels"), it nonetheless amended 46 U.S.C. § 745 in a way that effectively codified the exclusivity rule of *Johnson.* Congress clearly thought, however, that the exclusivity provision followed from *Cosmopoli-*

agreements and for the Government to negotiate new ones. Yet it was essential that the masters and crews be government employees in order to obviate strikes and work stoppages, to insure sovereign immunity for the vessels, and to preserve wartime secrecy by confining all litigation concerning operation of the vessels to the admiralty courts where appropriate security precautions could be observed. The service agreement, therefore, provided that the officers and men to fill the complement of the

vessel should be procured by the general agent through the usual channels upon the terms and conditions customarily prevailing in the services in which the vessels were to be operated. These men, however, were to be hired by the master of the ship and were to be subject to his orders only. The responsibility of employing the officers, so the Regulations show, was vested exclusively in the master, and the men so hired became employees of the United States and not of the general agent.
337 U.S. 783, 798–99 (1949).

*tan Shipping.* One of the Senate reports on the act states:

> The legislation is not intended to affect existing rights of seamen against their vessels or against private companies who operate Government-owned vessels, or to affect remedies which may exist against other parties involved by existing law in any appropriate forum. It merely restates expressly the law presently established by the courts that, where any remedy in admiralty is provided against the United States, such remedy is exclusive of every other type of action by reason of the same subject matter against the United States or against its employees or agents.

S.Rep. No. 1782, 81st Cong., 2d Sess. (June 7, 1950), *reprinted in* 1950 U.S.C.C.A.N. at 4209. A subsequent Senate report makes even more clear that Congress acted on the belief that the *Cosmopolitan Shipping* Court returned the law to its holding in *Johnson.* That report explained:

> The first proviso [of the amended 46 U.S.C. § 745] declares the rule announced by the Supreme Court in *Cosmopolitan Shipping Co.* . . . and *Johnson* . . . that the remedy under the Suits in Admiralty Act is exclusive.

S.Rep. No. 2535, 81st Cong., 2d Sess. (Sept. 11, 1950), *reprinted in* 1951 A.M.C. 149, 151; *cf. Petition of United States,* 367 F.2d 505, 510–11 (3d Cir.1966) ("Congress intended to restore the *Johnson* decision in its entirety and in so doing to make governmental liability exclusive throughout a broad spectrum of contractual arrangements for the operation of public vessels. . . ."). Thus, Congress enacted the exclusivity rule of *Johnson,* but clearly believed that its action was consistent with the Supreme Court's decision in *Cosmopolitan Shipping.*

Given this history behind the 1950 amendment to 46 U.S.C. § 745, we reject the *Shields* court's reliance on the one sentence in the first Senate report that describes the holding of *Cosmopolitan Shipping.* We conclude that Congress intended § 745 to require seamen to sue the United States on any maritime action arising out of an injury on a ship owned by or operated for the government, even if the action arises from

the negligence of an agent's employee. *Cf. Johnson,* 280 U.S. at 326, 50 S.Ct. at 120. Therefore, we conclude that the exclusivity provision in 46 U.S.C. § 745 was intended to require a seaman injured aboard a government-owned ship to bring his maintenance and cure action against the United States.

### B.

■ We also disagree with the *Shields* court's conclusion that the language of the exclusivity provision does not prevent a seaman from suing the private operator of a government-owned ship for the arbitrary and willful failure to pay maintenance and cure. The SAA allows a seaman to bring an admiralty action against the United States to collect his unpaid maintenance and cure. 46 U.S.C. § 742 (providing that a seaman may bring a cause of action in admiralty against the United States in circumstances where the cause of action could be brought against a private party). The subject matter of this claim under the SAA is the seaman's entitlement to maintenance and cure resulting from his injury while employed aboard the ship. We find that the seaman's action against the operator for the arbitrary and willful failure to pay maintenance and cure deals with the same subject matter. Although the claim against the operator highlights the wrongful conduct of the operator's administrative employees, the action nonetheless arises from the seaman's entitlement to maintenance and cure resulting from his injury while employed aboard the ship. Section 745 of the SAA therefore precludes the action against the operator and requires the seaman to bring the maintenance and cure action against the United States. 46 U.S.C. § 745.

■ Apparently, the *Shields* court went astray by treating the *arbitrary and willful* refusal to pay maintenance and cure as a cause of action separate from the *simple* failure to pay maintenance and cure benefits when due. There is no cause of action specifically for the arbitrary and willful refusal to pay maintenance and cure. Under general maritime law, a seaman injured while employed aboard a ship is entitled to receive maintenance and cure, and he can bring an

admiralty suit to recover any unpaid maintenance and cure benefits. Courts have long awarded punitive damages to seamen where maintenance and cure benefits have been arbitrarily and willfully denied. *E.g.*, *Holmes v. J. Ray McDermott & Co.*, 734 F.2d 1110, 1118 (5th Cir.1984); *Robinson v. Pocahontas, Inc.*, 477 F.2d 1048, 1051–52 (1st Cir.1973). Punitive damages, however, is merely an additional remedy in the seaman's maintenance and cure action. The *Shields* court, in effect, turned the punitive damages remedy into a separate cause of action.

We conclude that the "by reason of the same subject matter" language of 46 U.S.C. § 745 does not provide a hook to exempt maintenance and cure claims, even ones characterized as "the arbitrary and willful failure to pay maintenance and cure," from the reach of the exclusivity provision.[6]

### IV.

Having rejected the reasoning of *Shields*, we conclude that the exclusivity provision of 46 U.S.C. § 745 bars Manuel's proposed action against IMC for the arbitrary and willful failure to pay maintenance and cure. The SAA provides Manuel with a remedy against the United States to vindicate his entitlement to maintenance and cure. 46 U.S.C. § 742. Because of the exclusivity provision, the remedy provided by the SAA precludes any action against IMC that deals with the same subject matter. 46 U.S.C. § 745. Manuel's proposed action against IMC, although highlighting IMC wrongful handling of his benefits claim, nonetheless arises from his entitlement to maintenance and cure resulting from his injury while employed aboard a ship. Because the SAA provides a remedy by rea-

son of that subject matter, Manuel cannot bring a maintenance and cure claim against IMC.

We recognize that our decision creates the harsh result that Manuel will not be able to recover punitive damages even if he can show that IMC arbitrarily and willfully withheld his maintenance and cure benefits. As a consequence, private operators managing ships owned by the United States can arbitrarily and willfully refuse to pay an injured seaman's maintenance and cure without suffering any penalty. Nonetheless, the exclusivity provision in 46 U.S.C. § 745 clearly dictates this result. If Congress considers this situation to be unfair, it can correct the problem by carving out a maintenance and cure exception to the exclusivity rule, by waiving the United States' sovereign immunity with respect to punitive damages in maintenance and cure suits, or by taking some other legislative action. This Court, however, cannot legislate for Congress.

We conclude that the district court correctly denied Manuel's motion for leave to amend his complaint to bring an action against IMC for its arbitrary and willful failure to pay maintenance and cure. We affirm the decision of the district court.

*AFFIRMED.*

---

6. Similarly, we reject Manuel's argument that the SAA does not "provide a remedy" for the arbitrary and willful failure to pay maintenance and cure. Manuel argues that the only remedy for the arbitrary and willful failure to pay maintenance and cure is punitive damages. Because the SAA has not waived the United States' sovereign immunity with respect to suits for punitive damages, Manuel argues that the SAA does not provide a remedy for the arbitrary and willful failure to pay maintenance and cure. We conclude that Manuel's argument merely attempts to create a cause of action out of the punitive damages remedy. Manuel's action against IMC is one to vindicate his entitlement to maintenance and cure resulting from his injury aboard the ship. In resolving his maintenance and cure action against IMC, a court may grant punitive damages if it concludes that the maintenance and cure benefits were arbitrarily and willfully withheld. The SAA, however, allows Manuel to vindicate his entitlement to maintenance and cure against the United States, but the sovereign immunity power of the United States limits his remedies. Nonetheless, the SAA provides a remedy for Manuel's maintenance and cure claim. Section 745 of the SAA therefore bars Manuel's action against IMC.