**James Peter RAIBLE, Plaintiff,**

v.

**Major John CAMPBELL, Defendant.**

**No. 4:94–CV–35–BO(2).**

United States District Court,
E.D. North Carolina,
New Bern Division.

Jan. 9, 1996.

**186**

Frank V. LeBlanc, III, Bates & LeBlanc, Metairie, LA, and Karen Paden Boyle, Boyle, Carter & Gaines, Wilmington, NC, for plaintiff.

C. David Creech and Charles E. Simpson, Jr., Harris, Shields & Creech, New Bern, NC, for defendant.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

The incidents giving rise to this complaint took place in Dubai, United Arab Emirates, while the parties were both serving as crewmen aboard the S.S. DIAMOND STATE. The DIAMOND STATE, a ship owned by the United States Maritime Administration ("MARAD"), was being operated by the Interocean Management Corporation ("IOM") pursuant to a contract with MARAD and the United States Department of Transportation ("DOT"). On March 19, 1991, and again on March 20, 1991, defendant allegedly assaulted the plaintiff, causing him great bodily harm.

On March 17, 1993, plaintiff commenced a lawsuit against the United States, IOM, and the defendant, in the United States District Court for the Western District of Tennessee, Western Division, seeking damages for injuries he sustained in the above-described incidents. (W.D.Tenn.Civ. Action No. 93–2262). The District Court, Chief Judge Odell Horton, dismissed the action as to IOM on the basis that IOM was an agent of the United States and as such, plaintiff's recovery was limited by the Clarification Act, 50 U.S.C.App. § 1291(a), to an action against the United States under the Suits in Admiralty Act ("SAA"), 46 U.S.C.App. § 741 *et seq.* The Court dismissed the action as to defendant for lack of personal jurisdiction. Thereafter, plaintiff filed this maritime action against defendant in the Eastern District of North Carolina, where defendant apparently resides.

This matter comes before the Court on defendant's motion to dismiss pursuant to Fed.R.Civ.P.Rules 12(b)(1) and 12(b)(6). Defendant claims that plaintiff was held to have been an employee of the United States under the Clarification Act with respect to the other defendants, and that he must therefore carry the same status in a lawsuit based on the same events with respect to this defendant. And since both parties must have held the same status relative to the United States, the defendant claims that he, too, acted as an employee of the United States during the alleged incidents, and therefore cannot be held to answer the complaint by virtue of the Suits in Admiralty Act's exclusivity provision. The defendant also claims that this action is barred by the statute of limitations.

*The Clarification and Suits in Admiralty Acts.*

■ The Clarification Act, 50 U.S.C.App. § 1291(a) states in pertinent part:

[M]embers of crews ... employed on United States ... flag vessels as employees of the United States through the War Shipping Administration [1] shall, with respect to

1. MARAD is the successor to the War Shipping Administration.

... (2) death, injuries, illness, maintenance and cure ... have all of the rights, benefits, exemptions, privileges and liabilities, under law applicable to citizens of the United States employed as seamen on privately owned and operated American vessels ... Any claim referred to in clause (2) ... hereof shall ... be enforced pursuant to the provisions of the Suits in Admiralty Act [46 App.U.S.C.A. § 741 *et seq.*]

The Suits in Admiralty Act ("SAA"), 46 U.S.C.App. § 745 (emphasis added), states in pertinent part:

[W]here a remedy is provided by this chapter it shall hereafter be exclusive of any other action by reason of the same subject matter against the *agent or employee of the United States* ... whose act or omission gave rise to the claim.

Therefore, if a party is an employee of the United States for purposes of the Clarification Act, the suit is governed by the SAA, which establishes an immunity for agents or employees of the United States in lieu of recovery against the United States. In the Tennessee action, the District Court properly dismissed IOM from the suit, as plaintiff was and remains subject to the Clarification Act, while IOM was clearly acting in its capacity as an agent of the United States. Defendant's argument is quite straight-forward: if the plaintiff was an employee of the United States under the Clarification Act, then his crew-mate, the defendant, must have occupied the same status. And if defendant was an employee of the United States under the Clarification Act, then he should be entitled to the United States agent/employee immunity under the SAA. Although this argument is quite persuasive at first glance, closer examination reveals it to be untenable.

■ The Clarification Act was passed at the height of World War II to address the problem of maintaining two systems of compensation for members of the merchant marine that had evolved based upon the federal ownership interest in the vessel. *See Gordon v. Lykes Bros. S.S. Co., Inc.,* 835 F.2d 96, 97 (5th Cir.), *cert. denied,* 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 50 (1988). "It was to give seamen employees of the United States through the War Shipping Administration on public vessels or foreign-flag vessels or otherwise an election to employ the means of redress theretofore possessed by them ... or to enjoy the same rights as similar employees on merchant vessels." *Cosmopolitan Co. v. McAllister,* 337 U.S. 783, 791–92, 69 S.Ct. 1317, 1321–22, 93 L.Ed. 1692 (1949) (footnote omitted). "The Act thus gave effect to a congressional purpose to treat seamen employed through the War Shipping Administration as 'merchant seamen,' not as 'public vessel seamen.'" *Johansen v. United States,* 343 U.S. 427, 434, 72 S.Ct. 849, 853, 96 L.Ed. 1051 (1952) (citation omitted). The Act creates the legal fiction of an employment relationship between the seamen serving on federally owned vessels and the federal government in order to create tort liability under the SAA. In this manner, the act establishes that seamen in the service of the United States enjoy the same remedies regardless of who owns the vessel on which they serve. *See also Manuel v. United States,* 50 F.3d 1253 (4th Cir.1995).

Yet the Clarification Act did not convert seamen aboard federal vessels into federal employees for all purposes. This is clear from both the language of the act itself, as well as subsequent interpretation by the Supreme Court. *See* 50 U.S.C.App. § 1291(a) ("Such seamen, because of the temporary wartime character of their employment by the War Shipping Administration, shall not be considered as officers or employees of the United States for the purposes of [a variety of acts]"); *Cosmopolitan,* 337 U.S. at 792, 69 S.Ct. at 1322. Government employment status was desirable "to obviate strikes and work stoppages, to insure sovereign immunity for the vessels, and to preserve wartime secrecy by confining all litigation concerning operation of the vessels to the admiralty courts where appropriate security precautions could be observed." *Manuel,* 50 F.3d at 1258, fn. 5, quoting *Cosmopolitan,* 337 U.S. at 798–99, 69 S.Ct. at 1325–26.

The SAA's exclusivity provision, added in 1950, effectively eliminated any choice of remedies as between the private employer and the federal vessel owner, establishing the current framework by which IOM was dismissed from the Tennessee action. *Manuel*

contains an exhaustive history of this provision. After such extensive analysis, the Fourth Circuit concluded:

> that Congress intended § 745 to require seamen to sue the United States on any maritime action arising out of an injury on a ship owned by or operated for the government, even if the action arises from the negligence of an agent's employee. Therefore, we conclude that the exclusivity provision in 46 U.S.C. § 745 was intended to require a seaman injured aboard a government-owned ship to bring his *maintenance and cure action* against the United States.

*Manuel,* 50 F.3d at 1259 (citation omitted) (emphasis added).

The opinion makes clear that IOM was properly dismissed from this litigation, as it was clearly entitled to rely upon the exclusivity clause. In *Manuel,* the Fourth Circuit merely followed the literal command of the SAA, and held that agents and employees of the United States are immune from maritime actions arising aboard a vessel owned by or operated for the United States. Yet *Manuel* concerned an action for maintenance and cure against a seaman's employer, where there existed no question that the private defendant was an agent of the United States. The present question before the Court does not concern who might be barred from seeking relief by operation of the SAA's exclusivity clause, but rather who might invoke the exclusivity clause as a shield. The defendant argues for extending this protection to crew members, but that is taking the legal fiction of an employment relationship between a privately retained seaman and the federal government a step too far. "[O]nly if it is an agent of the United States is [a defendant] protected by the exclusivity clause." *Favorite v. Marine Personnel and Provisioning, Inc.,* 955 F.2d 382, 388 (5th Cir.1992).

The Clarification Act's legal fiction of an employment relationship between the federal government and the seamen hired by contractors who operate its ships cannot be imported into other areas of the law, for such an interpretation would convert all merchant marines privately employed aboard vessels of the United States into employees of the United States. To so hold would be tantamount to holding every employee of every indepen-

dent contractor who performs work for the government is a government employee. Seamen do not become agents of the United States merely on account of a contractual relationship between their true employer and the federal government, and they do not thereby gain the rights, privileges, and immunities of a federal agent.

Moreover, there is a distinct difference among the legal duties of care owed plaintiff by his employer (IOM), the ship's owner (the United States), and the defendant. Liability in tort against the ship's owner and operator flow from theories of unseaworthiness, negligent supervision, or negligent hiring. Of these, the first two are normally available against both the ship's owner and its operator, hence an exclusivity provision limiting liability to the federal owner. But defendant's duty of care is of an entirely different nature where he is alleged to have intentionally battered plaintiff. Satisfaction of the duties of those charged with maintaining a safe vessel does not satisfy the liability of one who is charged with a duty of refraining from intentionally causing others bodily harm.

Defendant's argument is reminiscent of that rejected in *Robinson v. Shell Oil Co.,* 70 F.3d 325 (4th Cir.1995) (en banc), where a statute's use of the term "employee" was strictly construed to mean "employee" as defined in the definitional section, and not "former employee." In the instant case, defendant asks the Court to import a peculiar legal fiction from an ambiguous statute (the Clarification Act's use of "as employees of the United States") to another statute (the SAA) whose meaning and purpose is quite clear. But the Clarification Act's legal fiction cannot seriously be, and apparently never has been, extended beyond its peculiar original context. "Nothing has been presented to us from the Act or from its legislative history indicative of congressional purpose to do anything other than to extend existing rights of merchant seamen to all seamen employed through the War Shipping Administration." *Cosmopolitan,* 337 U.S. at 792, 69 S.Ct. at 1322.

If defendant was an agent or employee of the United States, he must prove so without reliance upon the Clarification Act. Absent such reliance, it becomes readily apparent that defendant was neither an employee nor

an agent of the United States as contemplated by the SAA's exclusivity clause. Article 4 of the Service agreement between IOM and the United States makes clear that IOM would staff the ship pursuant to its customary practices and any collective bargaining agreements. Although the United States reserved the right to approve IOM's selection of a Master, such Master is defined as being an employee or agent of the United States "within the meaning, and only for the purposes of Section 1(a) of Public Law 17, 78th Congress, 1st Session, 57 Stat. 45, March 24, 1943, as incorporated into 46 U.S.C.App. § 1241a. [50 U.S.C.App. § 1291(a) ]." (Contract, Art. 4–a) (emphasis added). It would be incongruous to hold the Master's subordinates are employees or agents of the United States where the Master, whose selection is subject to the approval of the United States, is not. Furthermore, the parties were subject only to the direct control of IOM and the Master. The United States, at best, reserved only the right to complain about members of the crew. As stated by plaintiff, "the United States did not reserve the most fundamental right of maritime employers: the right to discharge, unilaterally and directly, unsatisfactory crewmembers." (Plaintiff's Brief, p. 4).

The Court holds that the defendant was not an agent or an employee of the United States within the meaning of the Suits in Admiralty Act, 46 U.S.C.App. § 745, and is thus not entitled to the shield provided by that provision.

*The Statute of Limitations*

■ Defendant's claim that this lawsuit is governed by North Carolina's one year statute of limitations for assault and battery, N.C.Gen.Stat. § 1–54, is misplaced. Although this lawsuit is brought before the Court pursuant to its diversity jurisdiction, the claim sounded is in general maritime tort law. The appropriate statute of limitations is thus three years, pursuant to 46 U.S.C.App. § 763. The law of North Carolina did not follow the parties to Dubai, nor could it be triggered by defendant's location in this state following the voyage.

*Conclusion*

Defendant's motion to dismiss is DENIED.