Thomas STONE, Appellant/Cross–
Appellee,

v.

INTERNATIONAL MARINE CARRIERS,
INC., Appellee/Cross–Appellant.

Nos. S–6261, S–6262.

Supreme Court of Alaska.

June 21, 1996.

John R. Fitzgerald, Tugman & Clark, Anchorage, for Appellant/Cross–Appellee.

Michael T. Stehle, Bogle & Gates, Anchorage, for Appellee/Cross–Appellant.

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

RABINOWITZ, Justice.

## I. *INTRODUCTION*

This appeal requires us to determine whether the Suits in Admiralty Act (SAA), 46 U.S.C. §§ 741–52, or the Public Vessels Act (PVA), 46 U.S.C. §§ 781–90, precludes an injured seaman's claims against a private contractor for willful failure to pay maintenance and cure. This appeal also involves the superior court's rulings on several motions relating to discovery and discovery sanctions.

## II. *FACTS AND PROCEEDINGS*

Thomas Stone was hired by International Marine Carriers, Inc. (IMC) to work as an able-bodied seaman aboard the U.S.N.S. SEALIFT ANTARCTIC. Stone alleges that he was injured while casting off from the Port of Anchorage on November 1, 1990. On November 19, when the ship docked in San Francisco, he was taken to a doctor who determined that he was unfit for duty due to a knee injury.

On or about December 14, 1990, Stone was hired by Crowley Caribbean Transport (Crowley) to work as an able-bodied seaman aboard the M/V SENATOR.[1] Stone allegedly injured his back on January 26, 1991. He left the vessel on January 29 and began receiving maintenance and cure from Crowley. The injuries Stone sustained aboard the SENATOR may have been related to the

---

1. Crowley was a defendant in the case below. Stone sued Crowley under traditional maritime law for injuries allegedly sustained aboard the M/V SENATOR in January 1991. Stone and Crowley settled the claim which was then dismissed with prejudice.

injuries he sustained aboard the ANTARC-TIC.

On February 4, 1991, Stone contacted Raymond Douglas, IMC's manager of marine personnel and marine insurance, to inquire about maintenance payments for November 19 through December 14, 1990. A protracted dispute ensued regarding the money that Stone believed was owed to him. Stone alleges that Douglas repeatedly ignored and lied to him in an effort to avoid responsibility for Stone's maintenance and cure. He also claims that as a result of IMC's "callous refusal" to pay his maintenance and cure, he had a nervous breakdown for which he has received extensive treatment.

Stone filed a complaint against IMC and Crowley on September 11, 1991. As against IMC, Stone's complaint included claims for negligence under the Jones Act, unseaworthiness, maintenance and cure, punitive damages, and failure to pay maintenance and cure.

On September 16, IMC wrote to Stone's counsel stating that under the Suits in Admiralty Act (SAA), 46 U.S.C. §§ 741–52, and the Public Vessels Act (PVA), 46 U.S.C. §§ 781–90, the United States rather than IMC is the proper defendant in Stone's suit. IMC requested Stone's counsel to voluntarily dismiss the action. Stone's counsel acknowledged receipt of the letter but declined to dismiss the suit against IMC.

IMC then filed a motion to dismiss. IMC provided documentation that the U.S.N.S. SEALIFT ANTARCTIC was owned by the United States and that under the SAA and PVA Stone's exclusive remedy was to sue the government.[2] Stone filed a partial opposition to IMC's motion, agreeing to dismiss his claims against IMC for negligence under the Jones Act, unseaworthiness, and maintenance and cure. However, Stone argued that his claims for compensatory and punitive damages arising out of IMC's willful failure to pay maintenance and cure remained valid.

Thereafter, Stone filed a motion for summary judgment on his claims for compensatory and punitive damages arising out of IMC's failure to pay maintenance and cure. IMC filed an opposition and cross-motion for summary judgment.

The superior court granted IMC's Motion to Dismiss and/or for Summary Judgment. In addition, the superior court granted IMC's motion to stay discovery, denied Stone's motion for sanctions, and denied Stone's motion to compel. IMC then moved for full attorney's fees, arguing that Stone and his attorney failed to consider the law before filing the complaint and engaged in a pattern of burdensome and harassing litigation practices. The superior court denied this motion and awarded IMC only 20 percent of its attorney's fees. Stone appeals, and IMC cross-appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

 This is an appeal from the superior court's grant of IMC's motion to dismiss or for summary judgment. Where matters outside the pleadings are presented to and not excluded by the court in resolving a motion to dismiss, such motion will be treated as one for summary judgment.[3] When reviewing a grant of summary judgment, this court must determine "whether there are any genuine issues of material fact and, if not, whether the moving party is entitled to judgment [as a matter of law] on the established facts." *Zeilinger v. SOHIO Alaska Petroleum Co.*, 823 P.2d 653, 656 n. 6 (Alaska 1992). Determining whether IMC is entitled to judgment as a matter of law requires this court to interpret provisions of the Suits in Admiralty Act. We exercise independent judgment when the interpretation and application of a statute is at issue. *Deal v. Kearney*, 851 P.2d 1353, 1356 n. 4 (Alaska 1993).

---

**2.** The statute of limitations under the SAA and PVA is two years. 46 U.S.C. § 745. Thus, the period of limitations expired on or about November 1, 1992. However, the statute had not expired when IMC informed Stone that the proper defendant was the United States.

**3.** Alaska R. Civ. P. 12(b); *Adkins v. Nabors Alaska Drilling*, 609 P.2d 15, 21 (Alaska 1980).

■■■ This appeal also involves the superior court's rulings on Stone's motion to compel further discovery, Stone's motion for sanctions, IMC's motion for a stay of discovery, and IMC's motion for attorney's fees. We review such rulings for an abuse of discretion. *R.E. v. State,* 878 P.2d 1341, 1345 (Alaska 1994) (motion to compel); *Crook v. Mortenson–Neal,* 727 P.2d 297, 306 (Alaska 1986) (motion for attorney's fees); *Hart v. Wolff,* 489 P.2d 114, 118 (Alaska 1971) (motion for sanctions). Abuse of discretion will be found where this court is left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling. *First Nat'l Bank v. Office of Public Advocacy,* 902 P.2d 330, 334 (Alaska 1995).

### B. *The Exclusivity Clause of the Suits in Admiralty Act*

The primary question presented by this appeal is whether the exclusivity clause of the Suits in Admiralty Act precludes an injured seaman from proceeding against the private operator of a government vessel on a theory of willful failure to pay maintenance and cure.[4] The clause in question, 46 U.S.C. § 745, provides in pertinent part that

> where a remedy is provided by this chapter it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States ... whose act or omission gave rise to the claim....

By voluntarily dismissing his claim for maintenance and cure against IMC, Stone has seemingly acknowledged that the SAA designates the United States as the proper party to sue on his claim for maintenance

and cure. There can be little question that this is correct.[5]

Stone, however, is not now suing IMC for unpaid maintenance and cure, but rather for damages resulting from IMC's willful failure to pay that maintenance and cure. He characterizes this claim as one which "seeks recovery for a tort committed by the claims department and/or Ray Douglas of IMC, and not for a tort committed on board a vessel operated for the United States." Thus, we must decide whether this claim for damages resulting from a willful failure to pay maintenance and cure also is precluded by the SAA.

Several federal courts have recently addressed this question and reached conflicting results. At least four district courts and one court of appeals have held that a claim for willful failure to pay maintenance and cure against a private contractor is precluded by section 745. *Manuel v. United States,* 50 F.3d 1253 (4th Cir.1995); *Stewart v. United States,* 903 F.Supp. 1540 (S.D.Ga.1995); *Smith,* 896 F.Supp. at 75; *Fratus v. United States,* 859 F.Supp. 991 (E.D.Va.1994); *Farnsworth v. Sea–Land Serv.,* 1989 WL 20544 (E.D.La.1989), *aff'd,* 896 F.2d 552 (5th Cir.1990), *cert. denied,* 498 U.S. 880, 111 S.Ct. 214, 112 L.Ed.2d 174 (1990). Three other district courts have concluded that such claims are not precluded. *Abogado,* 890 F.Supp. at 626; *Henderson v. International Marine Carriers,* 1990 A.M.C. 400 (E.D.La. 1989), *aff'd,* 921 F.2d 275 (5th Cir.1990); *Shields,* 662 F.Supp. at 187.

In light of these conflicting results, we undertake an independent analysis of the effect of the SAA on claims against private contractors for willful failure to pay maintenance and cure. It must be noted that this appeal raises the possibility that there are

4. "Because the PVA [Public Vessels Act] incorporates the provisions of the SAA, including the exclusivity provision, *see* 46 U.S.C. § 782, the Court need not decide at this time whether this case falls under the PVA or SAA." *Shields v. United States,* 662 F.Supp. 187, 188 n. 1 (M.D.Fla.1987).

5. *See* 46 U.S.C. § 742; *Manuel v. United States,* 50 F.3d 1253, 1259 (4th Cir.1995) ("The SAA allows a seaman to bring an admiralty action against the United States to collect his unpaid maintenance and cure."); *Abogado v. Interna-*

*tional Marine Carriers,* 890 F.Supp. 626, 630 (S.D.Tex.1995) (" § 745 [of the SAA] clearly allows seamen to assert claims for maintenance and cure against the government"). Since the SAA provides a remedy against the United States for unpaid maintenance and cure, section 745 bars any claim against IMC for these funds. *Smith v. MAR, Inc.,* 896 F.Supp. 75, 76 (D.R.I. 1995); *Cruz v. Marine Transp. Lines,* 634 F.Supp. 107 (D.N.J.), *aff'd,* 806 F.2d 252 (3d Cir.1986), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987).

cognizable maritime claims which a seaman can not bring against the United States because they are beyond the scope of the SAA but which the SAA nonetheless precludes him from bringing against the government's agent. To whatever extent this might be the case, the rights of seamen employed on government vessels are diminished in relation to seamen employed on private vessels, and otherwise actionable misconduct by the government's agents is effectively immunized. The Fourth Circuit candidly acknowledged this:

> We recognize that our decision creates the harsh result that Manuel [the injured seaman] will not be able to recover punitive damages even if he can show that IMC arbitrarily and willfully withheld his maintenance and cure benefits. As a consequence, private operators managing ships owned by the United States can arbitrarily and willfully refuse to pay an injured seaman's maintenance and cure without suffering any penalty.

*Manuel*, 50 F.3d at 1260. The Fourth Circuit concluded, however, that " § 745 clearly dictates this result," adding that "[i]f Congress considers this situation to be unfair, it can correct the problem...." *Id.*

The content of the claim which Stone calls "tortious failure to pay maintenance and cure" has been described as follows:

> The negligent failure to pay maintenance and cure is tortious conduct that makes the employer responsible for any aggravation of the injury suffered by the seaman. In addition, an employer's willful and arbitrary failure to pay maintenance and cure renders the employer liable for (1) attorneys' fees and (2) punitive damages.

1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6–34, at 366–67 (2d ed.1994).[6] As this description illustrates, there are three fundamental damages compo-

nents to the claim of tortious failure to pay maintenance and cure: (1) compensatory damages for any aggravation of injuries caused by the failure to pay, (2) punitive damages, and (3) attorney's fees.

■ We now turn to the preliminary question of whether, and to what extent, the SAA affords a remedy for willful failure to provide maintenance and cure. Since section 745 clearly precludes suit against IMC on all claims for which the SAA provides the same remedy against the United States, this question is potentially dispositive.

Based on the language of the statute, the scope of the SAA seems quite comprehensive. The SAA authorizes in personam suit against the United States "[i]n cases where if such vessel were privately owned or operated ... a proceeding in admiralty could be maintained...." 46 U.S.C. § 742. It has been observed that, under the SAA, "[f]or the most part the United States is liable in admiralty to the same extent as a private entity."[7] As mentioned above, admiralty claims for maintenance and cure fall within the scope of this section.

From the facts in this record, it appears that IMC administers maintenance and cure claims, for which the government is ultimately answerable, in its capacity as an agent for the United States. Given this fact, we fail to see any reason why the government could not be held liable for IMC's shortcomings in this respect under agency principles as they are embodied in 46 U.S.C. section 742. Insofar as Stone's claim seeks compensatory or aggravation damages flowing from IMC's willful failure to pay maintenance and cure, section 742 appears to allow him to proceed against the United States.[8]

■ With respect to the punitive damages component of the claim, the analysis is more

---

6. In *Picou v. American Offshore Fleet, Inc.*, 576 F.2d 585, 587 (5th Cir.1978), the court said: [A]s stated in [*Cortes v. Baltimore Insular Line*, 287 U.S. 367 [53 S.Ct. 173, 77 L.Ed. 368] (1932)] ..., if the failure to give maintenance or cure has caused or aggravated an illness, the seaman has his right of action for the injury thus done to him, "the recovery in such circumstances including not only necessary expenses, but also compensation for the hurt[.]"

7. 2 Schoenbaum § 20–1, at 445.

8. On the point of who may ultimately bear the burden in such an action, IMC suggests that certain provisions in its contract with the United States might conceivably allow the government to seek indemnity from IMC.

difficult. Although punitive damages were traditionally available in suits against a private employer for willful failure to pay maintenance and cure, *Weason v. Harville*, 706 P.2d 306, 310 (Alaska 1985); *Holmes v. J. Ray McDermott & Co.*, 734 F.2d 1110 (5th Cir.1984), the SAA does not authorize punitive damages against the United States. *Abogado*, 890 F.Supp. at 631–32. This discrepancy is generally the locus of dispute among the earlier cases. Some courts have held that since this remedy is unavailable under the SAA, there is no reason that the exclusivity clause of that statute should bar a party from proceeding against the culpable agent of the government. *See, e.g., Abogado*, 890 F.Supp. at 632–634. Other courts have held that since the remedy arises from the same subject matter as a general claim for maintenance and cure, it is precluded by section 745. *See, e.g., Manuel*, 50 F.3d at 1259.

Since we conclude that punitive damages are no longer available against any party for a claim of willful failure to pay maintenance and cure, we need not resolve this dispute. The Fifth Circuit Court of Appeals, sitting en banc, recently concluded that subsequent to *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), "punitive damages should no longer be available in cases of willful nonpayment of maintenance and cure under the general maritime law." *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1513 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 706, 133 L.Ed.2d 662 (1996). The Ninth Circuit, in *Glynn v. Roy Al Boat Management Corp.*, 57 F.3d 1495, 1505 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 708, 133 L.Ed.2d 663 (1996), reached the same conclusion.

These rulings were predicated on the fact that the personal injury aspect of a failure to provide maintenance and cure "overlaps with the personal injury coverage of the Jones Act." *Guevara*, 59 F.3d at 1511. The *Miles* Court observed, in the context of rejecting a claim for loss of society, that "[m]aritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit

of seamen and those dependent upon them." *Miles*, 498 U.S. at 36, 111 S.Ct. at 327. The Fifth and Ninth Circuits both held that allowing the recovery of punitive damages in a maintenance and cure case would be inconsistent with the principles set forth in *Miles*. We agree.

The fact that punitive damages are no longer available in cases for tortious or willful failure to pay maintenance and cure under the general maritime law renders moot the question of whether section 745 precludes Stone from seeking punitive damages against IMC. Even if IMC were not an agent of the government, punitive damages would be unavailable.

■ This leaves us only with the third component of a willful failure to pay maintenance and cure claim: attorney's fees. Both the Fifth and Ninth Circuits have held that although punitive damages are no longer available in these cases subsequent to *Miles*, attorney's fees remain available when the proper showing of egregious fault is made. *Guevara*, 59 F.3d at 1513; *Glynn*, 57 F.3d at 1505. However, as a federal district court has noted,

> Although attorney's fees may be awarded where a shipowner's failure to provide maintenance and cure is shown to be arbitrary, recalcitrant or unreasonable, *Kopczynski v. The Jacqueline*, 742 F.2d 555, 559 (9th Cir.1984) [*cert. denied*, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985) ], counsel fees may not be awarded against the United States in the absence of specific statutory authority. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 267–268 [95 S.Ct. 1612, 1626–1627, 44 L.Ed.2d 141] (1975).

*Bailey v. United States*, 1993 WL 87813 (N.D.Cal.1993).

There is consequently a discrepancy between the remedies available to injured seamen employed on private vessels and those employed on government vessels with respect only to attorney's fee awards. Since they are not authorized by the SAA, attorney's fees are not available to seamen whose claims are against the United States. However, suits under the SAA are hardly unique in this respect. In most contexts, attorney's

fees are not available against the United States. This does not mean, however, that Stone may maintain an action against IMC for attorney's fees. SAA provides a remedy for compensatory damages suffered as a result of willful failure to pay maintenance and cure. The fact that that remedy does not encompass attorney's fees does not make the SAA remedy any less exclusive under the terms of section 745.

In light of the foregoing analysis, we conclude that the only remedy that section 745 precludes Stone from seeking is his attorney's fees. He is authorized under the SAA to seek compensatory damages against the United States for injuries that he may have suffered as a result of its agent's willful refusal to pay maintenance and cure, and he would have no punitive damages remedy even if he were permitted to sue IMC directly. Consequently, in this context, the scope of claims precluded by section 745 does not exceed to any significant extent the scope of claims sustainable against the United States under the SAA.

Our understanding of the scope of the SAA and of the Supreme Court's holding in *Miles* leads us to conclude that the critical dimensions of recovery on a claim of willful failure to pay maintenance and cure are now effectively the same against the government as they are against a private employer. As such, we need not endorse a reading of the exclusivity section which significantly diminishes the rights of seamen injured on board government vessels. Since the same type of recovery could have been had against the United States on the claim raised by Stone as could be had against its agent, the SAA designates the United States as the only proper defendant.

### C. *Motions Rulings*

Having determined that dismissal of Stone's claims against IMC was appropriate

under these circumstances, we turn to his procedural complaints. Stone first argues that by not allowing him an opportunity to depose Ray Douglas or to oppose IMC's cross-motion for summary judgment despite a grant of a Civil Rule 56(f) extension of time, "the court based its ruling on an incomplete picture of the facts of this case." Stone also complains that the superior court abused its discretion by failing to grant his motion to compel and by granting IMC's motion to stay discovery.

In view of our conclusion that IMC was not, as a matter of law, the proper defendant to proceed against on these claims, it was not necessary for Stone to have an opportunity to perfect his factual allegations against IMC. Consequently, any error by the superior court in failing to properly facilitate development of the factual record in this case was harmless.

### D. *Sanctions*

Stone moved for sanctions against IMC for failing to produce Douglas and a Civil Rule 30(b)(5) designee for depositions, and IMC in turn moved for full attorney's fees against Stone pursuant to Civil Rule 82(b)(3).[9] The superior court denied Stone's motion for sanctions and awarded IMC only twenty percent of its attorney's fees, or $6,707.80.

In light of the very short notice that IMC was given regarding the deposition—Stone's deposition notices were sent out on February 18 and 22 for depositions scheduled on February 25—and the fact that IMC had filed a motion to stay discovery under Civil Rule 26(c) on February 16, we conclude that it was not an abuse of discretion for the superior court to deny the motion for sanctions against IMC.[10]

---

9. Civil Rule 82(b)(2) provides that in a case resolved without trial, the court shall award the prevailing party twenty percent of its actual attorney's fees. However, under Civil Rule 82(b)(3), the court may depart from the twenty percent formula if it determines that a variation is warranted after consideration of various factors including "the reasonableness of the claims and defenses pursued by each side" and "vexa-

tious or bad faith conduct." Alaska R. Civ. P. 82(b)(3)(F), (G).

10. Civil Rule 37(d) provides that the failure of a party to attend its own deposition will not be excused, and sanctions may be imposed by the court, "unless the party failing to act has applied for a protective order as provided for by Rule 26(c)."

■ With respect to the attorney's fee award, we note that there is a substantial body of law supporting precisely the position that Stone has taken in this litigation. We have previously held that an award of full fees is "manifestly unreasonable" in the absence of vexatious conduct by the losing party. *State v. University of Alaska*, 624 P.2d 807, 817 (Alaska 1981). The record of this case reveals that Stone was simply vigorously litigating an unresolved question. Under these circumstances, it was not an abuse of the superior court's discretion to deny IMC's motion for full attorney's fees.

## IV. CONCLUSION

Since, with the exception of attorney's fees, the SAA allows essentially the same remedies on a claim for willful failure to pay maintenance and cure against the United States as would theoretically be available against its private agent, section 745 precludes suit against IMC on this claim. The superior court did not abuse its discretion by refusing to facilitate unnecessary factual development of the record in denying Stone's motions to compel and for discovery sanctions. Further, the superior court did not err in granting IMC's motion to stay discovery and in denying IMC's motion for full attorney's fees.

The judgment of the superior court is AFFIRMED.

MOORE, C.J., not participating.