**John FARLEY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15221.**

United States Court of Appeals
Ninth Circuit.

Jan. 6, 1958.

Williams & Alley, Portland, Or., for appellant.

C. E. Luckey, U. S. Atty., Krause, Evans & Lindsay, Portland, Or., for appellee.

Before HEALY, POPE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Farley, an engineer on the S. S. Augustin Daly, on the night of April 5–6, 1952, momentarily was standing in a launch alongside the ship. One Potts, assistant cook, was ascending the pilot ladder from the launch to the main deck. Potts had been drinking intoxicating liquors and was climbing the ladder, one bottle of his beverage under his left arm and a second in his right hand. No mean feat, if he could have accomplished it— but he didn't. He lost his hold as he reached the main deck and fell on Farley. Farley suffered severe injuries; Potts, slight or none. At the time of the accident, the Augustin Daly was owned and operated by the United States and the vessel lay off shore in the port of Sasebo, Japan. Thus this suit in admiralty by Farley against the United States.

Farley was awarded $8,500.00 below for general and special damages. This was principally for loss of wages to the time of trial, loss of anticipated future wages, and permanent pain, suffering and disability.

Dissatisfied as to amount, Farley appeals. The United States claiming prerequisites to jurisdiction were not satisfied cross-appeals. Also, the United States says there was no basis in the evidence for negligence liability.

Farley's plaint is that the trial court gave him all of the findings of great personal injury and prospective financial loss but gave him little money. So, he says we should increase the award.

The findings as to damage read as follows:

"7. That libelant's injuries proximately caused by respondent's servant's negligence were a concussion and nervous shock, fracture of the right clavicle, fractures of the seventh, eighth, tenth and twelfth dorsal vertebrae, a severe wrenching and tearing of the muscles, ligaments, tendons, and soft tissues; of the right shoulder and back, an irritation of the nerves in the back area, a traumatic capsulitis of fibrosis of the right shoulder joint, and an aggravation of a dormant pre-existing osteo-arthritis of the spine.

"8. That by reason of said injuries, libelant has suffered considerable pain and distress, will permanently suffer pain and distress, has sustained a permanent limitation of motion in the right shoulder joint, a permanent limitation of motion and instability of the dorsal spine, a loss of strength and gripping function of the right arm and hand, and has become totally and permanently disabled from following his usual and ordinary occupation of merchant marine engineer or any other heavy employment, and is further permanently disabled to the extent of fifty per cent from performing light duty employment.

"9. That at the time of libelant's said injury he was a healthy robust man, capable of engaging in strenuous labor, of the age of 58 years, with a life expectancy under United States Life Tables, 1949–1951, of 17.05 years, earning the approximate sum of $700.00 per month, exclusive of room and board, as a second assistant marine engineer; that libelant was, excepting one day, unemployed from the date of his injury, April 6, 1952, to date of trial, July 27, 1955, as a result of said injuries; that since August 13, 1952, libelant

has lost wages and will lose further wages by reason of said injuries.

"10. That libelant sustained general and special damages as a proximate result of said accident in the amount of $8,500.00."

We find the findings most puzzling. The findings prepared by counsel for libelant became the findings of the court above when they were signed, but it appears that figure of $8,500.00 in damages in finding 10 was solely selected by the court. Such a figure, we believe, amounts to a finding that the injuries were not particularly serious or permanent. Yet that is not the language of findings 7, 8 and 9. The seriousness of the injuries and their consequences were in sharp dispute. Were we to say that the finding of $8,500.00 by itself is clearly erroneous, we would have to say that the finding was not made on an intelligent basis. Of this, we are not positive, although we are positive something is wrong.

Trials de novo in admiralty on appeal, in discard for many years, expired with McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. Assuming we have the power to increase the award, in the circumstances here we would be most inadequate to the task. We saw no witnesses and cannot properly weigh the damage testimony.

But we do hold the findings are clearly erroneous because the amount awarded and the description of damage are inconsistent. Therefore, we vacate the decree and the damage findings 7, 8, 9 and 10, and direct the district court to find anew and enter another decree. It may be that the court will find 7, 8 and 9 overdone, or that 10 is insufficient. We express no opinion as to which result the court should reach. It may be that a new set of adjectives is needed to describe the damage, or, contrariwise, the price should be marked up.

The district court will be free on a new determination to make its own decision. Perhaps, it may want to check by further evidence on how Farley's con-

dition has progressed and on his current prospects for employment. This is all within its discretion . We are confident that the trial judge really understands the rules of damage and how to apply them and will do so if he gives all of the findings more close study. This, of course, does not vitiate the right of a party to again seek a review here, but ought to eliminate the necessity.

On the government's cross appeal, at some length and painstakingly, it attacks the negligence basis of the case. The points are:

1. Generally, there was no proof of negligence.

2. Negligence of Farley was the sole cause.

3. Breach of duty by Farley bars recovery.

4. The ship was not negligent for failure to warn Potts (the happy cook).

5. The ship was not unseaworthy.

This is not a case where the trial court, in the end, held for the ship owner. Probably we could uphold such a decree. Larsson v. Coastwise Line, 9 Cir., 181 F.2d 6. And, if we were more than intermediate authority, we might find the arguments to have merit. But the Supreme Court is applying the same standard to suits by seamen to recover damages for negligence attributable to the ship as it is to Federal Employers Liability cases. Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468. The trend of the Supreme Court's decisions is seen in McAllister v. United States, supra, and Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511.

Following the trend, we cannot say that Farley in the negligence field presented less than a question of fact, and we cannot say the findings were clearly erroneous.

We now turn to the government's jurisdictional point. It is one with some merit. It is to be remembered that the injury happened the night of April 5–6, 1952. About midnight of April 6–7, 1954, the claim might have been out-

lawed under the two year period of limitations in the Suits in Admiralty Act.[1] On March 25, 1954, Farley mailed a notice of claim to the U. S. Maritime Administration, a successor to the War Shipping Administration. On April 2, 1954, suit was filed. The eight elapsed days gave the agency no more than time to receive the document and get it to the right department; not time to act on it. If agency rejection was literally required (or was to be presumed from inaction for a period of time) before suit was filed, then Farley started too late[2] and he fails the jurisdictional test.

Farley replies:

1. In March and April, 1954, there were no existing requirements of notice and administrative disallowance.

2. If (1) above is wrong, then notice and administrative disallowance are not both conditions precedent: If notice is given in time, administrative disallowance may ripen after the filing of suit.

The parties agree that the Augustin Daly was a government operated merchant vessel, that Farley's basic right to sue stems from the 1920 Suits in Admiralty Act, 41 Stat. 525. See 46 U.S.C.A. 741 et seq. The limitation provision, in pertinent part reads as follows:

" * * * Provided, That suits based on causes of action arising prior to the taking effect of this chapter shall be brought within one year after this chapter goes into effect; and all other suits hereunder shall be brought within two years after the cause of action arises: * * * ".

Of course, from 1920 until World War II very few seamen were employed upon government merchant vessels. But with the United States' entry into the war most of the merchant seamen of this country found themselves in the official merchant marine of the United States. This resulted in serious problems for the War Shipping Administration under the U. S. Employees' Compensation Act, 5 U.S.C.A. § 751 et seq., Social Security and Civil Service. So the Clarification Act (Public Law 17), 57 Stat. 45, was passed. Approval was on March 24, 1943. While mainly concerned with things other than seamen's claims, it did provide in the first section:

"That (a) officers and members of crews (hereinafter referred to as 'seamen') employed on United States or foreign flag vessels as employees of the United States through the War Shipping Administration shall, with respect to (1) laws administered by the Public Health Service and the Social Security Act, as amended by subsection (b) (2) and (3) of this section; (2) death, injuries, illness, maintenance and cure, loss of effects, detention, or repatriation, or claims arising therefrom not covered by the foregoing clause (1); and (3) collection of wages and bonuses and making of allotments, have all of the rights, benefits, exemptions, privileges, and liabilities, under law applicable to citizens of the United States employed as seamen on privately owned and operated American vessels. * * * Any claim referred to in clause (2) or (3) hereof shall, if administratively disallowed in whole or in part, be enforced pursuant to the provisions of the Suits in Admiralty Act, notwithstanding the vessel on which the seaman is employed is not a merchant vessel within the meaning of such Act. * * * When used in this subsection the term 'administratively disallowed' means a denial of a written claim in accordance with rules or regulations prescribed by the Administrator, War Shipping

---

1. 46 U.S.C.A. § 745.

2. Of course, there is our case of Thurston v. United States, 9 Cir., 179 F.2d 514, holding that the two year limitation was extended by 60 days, the period under the regulations for agency consideration of claims. In view of our end result, we do not reach the theory of Thurston and kindred cases.

Administration." 50 U.S.C.A.Appendix, § 1291.

Supplementing the statute, the War Shipping Administration issued on April 22, 1943, General Order 32. Pertinent portions are set forth in the margin.[3] Later, on December 21, 1953, the Federal Maritime Board, Maritime Administration, to whom the powers of the old War Shipping Administration had passed, revoked General Order No. 32.[4]

Problems of merchant ships and seamen in government service again reared themselves in some volume in 1951 with the defense of South Korea, principally by the United States. By 1951 the government's shipping business was in the hands of the United States Maritime Commission, so in June 1951, one finds Congress backing into the matter of seamen's status through the Third Supplemental Appropriation Act of 1951.[5] Part of the 1943 Clarification Act was purportedly revived. The "revival" was tucked away under the heading: "Department of Commerce, Maritime Activities, Vessel Operations Revolving Fund." The relevant portion is as follows:

"Provided, That the provisions of sections 1(a), 1(c), 3(c) and 4 of

3. See General Order 32, April 22, 1943, 8 Fed.Reg. 5414.

"304.20 Statutory provisions. Officers and members of crews (hereinafter referred to as 'seamen') employed on United States or foreign flag vessels owned by or under bareboat charter to the War Shipping Administration and operated by an Agent under a General Agency form of Service Agreement, with respect to the claims hereinafter specifically enumerated, are given all of the rights, benefits, exemptions, privileges, and liabilities, under law applicable to citizens of the United States employed as seamen on American flag vessels privately owned and operated. Under such Act, court action (1) may not be instituted to enforce such a claim until it shall have been administratively disallowed, in whole or in part, and (2) must be brought pursuant to the Suits in Admiralty Act."

"304.23 Court action, condition precedent. No seaman or his surviving dependent or beneficiary or legal representative having a claim under the provisions of sections 304.21 and 304.22, [refers to injury, maintenance and cure, etc.] shall commence a court action for the enforcement of such claim, unless such claim has been filed by him or on his behalf or by or on behalf of his surviving dependent or beneficiary or legal representative as provided in sections 304.-24 and 304.25 and has been administratively disallowed by the person or agency with whom it was so filed."

"304.24 Claim, contents. The claim need not follow any particular form, but it shall be in writing. It shall contain such particulars as are reasonably necessary as a basis for the allowance or administrative disallowance of such claim and should include, with respect to the seaman in question, his home address, date of birth, place of birth, certificate of identification number, as well as all the facts and circumstances leading up to and surrounding the happening of the event out of which it is alleged the claim arose."

"304.25 Claims, with whom filed. Claims based upon any decision of the Maritime War Emergency Board or any insurance policy issued by the War Shipping Administration, excluding claims for loss of or damage to personal effects (if the insured is alive), bonus and detention and repatriation benefits, shall be filed with the Chief Adjuster, Division of Wartime Insurance, War Shipping Administration, 99 John Street, New York City, or such other agencies or persons as may be designated by the Chief Adjuster for the purpose of determining the allowance or disallowance of such claim. All other claims, including claims for loss of or damage to personal effects (if the insured is alive), bonus, and detention and repatriation benefits, shall be filed with the General Agent of the vessel with respect to which such claims arose, or such Agent's Berth subagent to which the former may refer the claim for handling."

"304.26. Claim, when presumed administratively disallowed. If the person or agency with whom the claim is filed, in accordance with the directions contained herein, fails to notify the claimant in writing of a determination upon such claim, within sixty days following the date of filing thereof, the claim shall be presumed to have been administratively disallowed, and the claimant shall be entitled to enforce his claim by court action."

4. 18 Fed.Reg. 8730.

5. 65 Stat. 59, 46 U.S.C.A. § 1241a.

Public Law 17, Seventy-Eighth Congress (57 Stat. 45), as amended, shall be applicable in connection with such operations and to seamen employed through general agents as employees of the United States, who may be employed in accordance with customary commercial practices in the maritime industry, notwithstanding the provisions of any law applicable in terms to the employment of persons by the United States."

The United States says that this Third Supplemental Appropriation Act of 1951 "revived" not only the Clarification Act's provisions on seamen's claims, but also General Order 32 of April 22, 1943, by implication. Farley thinks the idea of the regulation being revived in this offhand manner is beyond reason.

■ But in connection with this 1951 Third Supplemental Appropriation Act "revival" we are unable to find that the Clarification Act had fully spent itself. Section 5 thereof, U.S.Code Cong.Service 1943, page 48, tied it in with the First War Powers Act, 1941, 55 Stat. 838, 50 U.S.C.A.Appendix, § 601 et seq. By Sec. 401 of that act the authority (except as to Trading with the Enemy of the statute was limited to "during the continuance of the present war and for six months after the termination of the war, or until such earlier time as the Congress by concurrent resolution or the President may designate." Although the functions of the War Shipping Administration were transferred to the Maritime Commission in 1946,[6] it would not appear that the Clarification Act had spent itself fully at the time of the adoption of the Third Supplemental Appropriation Act of 1951.[7] But we are of the opinion that this appropriation act did reenact the provisions of Section 1 of the Clarification Act with the provision for administrative disapproval of claims. And we think whenever the vitality of the 1943 Act spent itself, the regulation for the filing of claims continued along under this 1951 appropriation act, or was revived. Stated another way, the Clarification Act, not dead in June, 1951, by reason of lack of proclamations or resolutions completely terminating World War II, was carried beyond the time of such proclamations by virtue of the Third Supplemental Appropriation Act of 1951, and the regulations for filing claims continued in force.

But, as noted, on December 21, 1953, the Federal Maritime Board, the original agency's mesne successor, abolished General Order No. 32. So in March and April, 1954, when Farley filed his claim and sued there just was no apposite regulation on the filing of claims.[8]

■ To us it would seem that the filing of claims sections of General Order No. 32 were constructed within the bounds of administrative authority. They were explicit enough to make the filing of the claim and its actual or presumptive disallowance conditions precedent to the filing of an action. If such a void existed here, the action well might have been dismissed upon the government's motion. But in 1954 there was no regulation.

One recalls, just as Farley says, his basic rights begin in the 1920 Suits in Admiralty Act. As to him sovereign immunity was there waived. The only new waiver of sovereign immunity in

---

6. 60 Stat. 481, 501, 50 U.S.C.A.Appendix, § 1291 note, 1946 U.S.Code Congressional Service, pp. 462, 479.

7. The Joint Resolution (No. 289) of Congress terminating the state of war between the United States and Germany was adopted on October 19, 1951, 50 U.S. C.A.Appendix, preceding § 1. The President's proclamation to the same effect followed on October 24, 1951. The record of the various treaties, resolutions and proclamations terminating World War II is not further appended for the reason that they are not considered particularly material to the result reached in the opinion.

8. Similar regulations were announced by the National Shipping Authority as Order No. 67 April 7, 1955. 20 Fed.Reg. 2414. This date is a year after the filing of suit and fifteen and a half months after General Order 32 was rescinded.

the Clarification Act would be as to civilian seamen employed on government operated vessels not in the government's merchant marine.[9] (Farley was in the merchant marine.) However, the government could make another law such as the Clarification Act putting conditions on the waiver.

But we think all important here are the words of the last pertinent sentence of Section 1 of the Clarification Act, continued, we think, by the Third Supplemental Appropriation Act of 1951. That sentence reads: "When used in this subsection the term 'administratively disallowed' means a denial of a written claim in accordance with rules or regulations prescribed by the Administrator, War Shipping Administration." Substituting "Federal Maritime Board, Maritime Administration, Department of Commerce,"[10] for "Administrator, War Shipping Administration," we find the board as above noted, on December 31, 1953, abolished the regulation for presenting claims and there were no regulations thereafter on presenting claims until on and after April 7, 1955, as above mentioned.

██ Congress provided that claims must be administratively disallowed in accordance with "rules and regulations" of the appropriate agency. We refuse to believe that Congress ever intended that if the agency made no regulations on claims, or abolished such regulations, that the seaman would have to make up a procedure of his own for presenting the claim to the agency. For the administrative right to look over the claims, the administrator had to have a procedure. In the absence of such a procedure, we hold that Farley could go ahead and sue on his particular claim without administrative presentation or disapproval.

On Farley's second point (one can file and wait for administrative rejection) he relies heavily on Manderschied v. United States, D.C.N.D.Cal.1950, 88 F.Supp. 232. There the injury was on January 28, 1946. The claim was filed by Manderschied with the vessel's general agent on December 1, 1947, and on January 26, 1948, he filed suit, the claim not having been acted upon administratively. Had he waited 60 days he might have been caught by the two year limitation. The Manderschied case assumes that the 1941 Clarification Act and regulations were still in force in 1948. Then, ignoring the regulations, the district court ruled that the Clarification Act refers only to "enforcement of claims;" thus, it said that it is all right to file the claim within time, file the suit without administrative disallowance and wait for administrative disallowance to overtake the suit.[11]

We now return to the ground upon which we decide: no regulation. The government quotes: "Men must turn square corners when they deal with the Government."[12] Sure, but if the government hides the corners, what should men then do?

Decree reversed for proceedings consistent with the opinion.[13]

---

9. Apparently Seaman Fox of Fox v. Alcoa S.S. Co., 5 Cir., 143 F.2d 667, was of the new class whose waiver originated in the Clarification Act.

10. An intermediate successor of the War Shipping Administration.

11. While Farley's case (without a regulation) is a fortiori to Manderschied, no opinion is expressed here on the district court's construction of the statute: One can file suit in time and wait for administrative allowance to catch up.

12. Rock Island, Arkansas & Louisiana Railroad Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188.

13. No attack was made on findings 11, 12 and 13, per se, which allowed $1,357 for medical treatment expense incurred by Farley or for maintenance from July 24, 1953, to July 21, 1955, at $8.00 per day for a total of $5,816. Those findings will stand along with all others not reached by the decision.