

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-1996

# O'Connell v. Interocean Mgt Corp

Precedential or Non-Precedential:

Docket 95-2062

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"O'Connell v. Interocean Mgt Corp" (1996). *1996 Decisions.* Paper 107.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/107

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 95-2062

----------

WILLIAM G. O'CONNELL, III,

Appellant

v.

INTEROCEAN MANAGEMENT CORP.

----------

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 94-cv-04121)

----------

Submitted Under Third Circuit LAR 34.1(a)
Monday, June 10, 1996

BEFORE:  SLOVITER, Chief Judge,
COWEN and GARTH, Circuit Judges

----------

(Opinion filed July 19, 1996)

----------

William G. O'Connell, III
22 Wellington Avenue
West Orange, New Jersey  07052

Pro Se Appellant

Frank W. Hunger
Assistant
Attorney General
Michael R. Stiles
United States Attorney

Damon C. Miller
U.S. Department of Justice
Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C.  20044-4271

                    Attorneys for Appellee
                    Interocean Management Corp.


                         _____

                    OPINION OF THE COURT

                         _____

GARTH, Circuit Judge:

        William G. O'Connell, III appeals from the district
court's order dismissing his complaint for lack of subject matter
jurisdiction pursuant to Federal Rule of Civil Procedure
12(b)(1).  The primary issue on appeal, which is one of first
impression in this circuit, is whether O'Connell's punitive-
damage claim premised on an arbitrary and willful failure to pay
maintenance and cure is barred by the exclusivity provision of
the Suits in Admiralty Act ("SAA"), 46 U.S.C.   745.  We hold
that the SAA's exclusivity clause divested the district court of
subject matter jurisdiction over O'Connell's punitive-damage
claim, and we accordingly affirm.

                           I.
        The complaint claimed subject matter jurisdiction under
28 U.S.C.   1333, as a case of admiralty or maritime jurisdic-

tion.  We are vested with appellate jurisdiction over the
district court's 12(b)(1) dismissal of the complaint pursuant to
28 U.S.C.   1291.  Our review of the district court's dismissal
for lack of subject matter jurisdiction is plenary.  Delaware
Valley Citizens Council for Clean Air v. Davis, 932 F.2d 256, 264
(3d Cir. 1991); York Bank & Trust Co. v. Federal Sav. & Loan Ins.
Corp., 851 F.2d 637, 638 (3d Cir. 1988), cert. denied, 488 U.S.
1005 (1989); Haydo v. Amerikohl Mining, Inc., 830 F.2d 494, 496
(3d Cir. 1987).

                           II.
        Plaintiff William O'Connell was employed as a merchant
seaman aboard the M/V Gopher State, a vessel owned by the United
States Maritime Administration ("MARAD") and operated by defen-

dant Interocean Management Corporation ("IOMC"), as an agent for
the United States.  On July 19, 1991, onboard the Gopher State,
O'Connell accidentally severed the tendon in his left little
finger while operating a grinding wheel.
        On July 24, 1991, O'Connell sought treatment at St.
Barnabas Medical Center, located in New Jersey.  Despite two
surgical procedures and a skin graft, O'Connell will never regain
full use of his little finger, which is permanently deformed.
        In November 1991, O'Connell signed a release, pursuant
to which IOMC agreed to pay O'Connell $17,500 (for lost wages)

and all medical expenses incurred as a result of the injury sustained while onboard the Gopher State. IOMC delayed paying O'Connell's medical expenses, however, despite O'Connell's numerous phone calls and letters. In May 1994, a balance of $8,924.22 remained outstanding on O'Connell's medical bill from St. Barnabas. Although IOMC ultimately paid the outstanding medical bill, it did so only after O'Connell hired an attorney to sue for payment.

On July 5, 1994, O'Connell filed the instant action, alleging that IOMC was liable for punitive damages in that it had arbitrarily and capriciously delayed paying maintenance and cure. Among other motions, IOMC moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that 46 U.S.C. 745 precludes a seaman's claim for maintenance and cure against a private operator of a vessel owned by the United States. The district court granted IOMC's motion to dismiss, concluding that all of O'Connell's claims are within the same subject matter as a claim for which the SAA provides a remedy and therefore within the exclusivity provision. District Court Opinion at 8. The instant appeal followed.

### III.

Under general maritime law, a member of a ship's crew who was injured or became ill while serving onboard the vessel could recover "maintenance and cure" from the shipowner/employer. "The right to maintenance and cure is an ancient right given to seamen by the maritime law." Jordine v. Walling, 185 F.2d 662, 665 (3d Cir. 1992). See generally Cox v. Dravo Corp., 517 F.2d 620 (3d Cir.) (providing a detailed historical exegesis of the origin of "maintenance and cure"), cert. denied, 423 U.S. 1020 (1975).

"Maintenance is the living allowance for a seaman while he is ashore recovering from injury or illness. Cure is payment of medical expenses incurred in treating the seaman's injury or illness." Barnes v. Andover Co., L.P., 900 F.2d 630, 633 (3d Cir. 1990) (citing Vaughan v. Atkinson, 369 U.S. 527, 531 (1962); Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 528 (1938)). An employer's obligation to furnish maintenance and cure continues "until the seaman has reached the point of maximum cure, that is until the seaman is cured or his condition is diagnosed as permanent and incurable." Id. at 633-34.

The remedy of "maintenance and cure" is a contractual obligation, which is independent of the shipowner's negligence or even the seaman's own negligence:

> [T]his obligation [of maintenance and cure] has been recognized consistently as an implied provision in contracts of marine employment. [T]he liability . . . in no sense is predicated on the fault or negligence of the shipowner. . . . So broad is the shipowner's obligation, that negligence or acts short of culpable misconduct on the seaman's part will not relieve him of the responsibility.

Aguilar v. Standard Oil Co., 318 U.S. 724, 730-31 (1943) (footnotes omitted).

If the shipowner unreasonably refuses to pay a marine employee's claim for maintenance and cure, the employee may recover consequential damages, including lost wages, pain and suffering, and attorneys' fees and costs. See Deisler v. McCormack Aggregates, Co., 54 F.3d 1074, 1084-85, 1087 (3d Cir. 1995). See also Sims v. United States War Shipping Admin., 186 F.2d 972, 973-74 (3d Cir.) ("We may regard it as settled law that if a man is injured or becomes ill while on a voyage, neglect to fulfill the duty to provide maintenance and cure may impose damages beyond mere cost of food and medicines.") (citing The Iroquois, 194 U.S. 240 (1904)), cert. denied, 342 U.S. 816 (1951).

Although we have yet to address the issue directly, some courts have allowed recovery of punitive damages against private shipowners who were not agents of the United States and who, taking a "callous" or "recalcitrant" view of their obligations, "arbitrarily and willfully" refused to pay maintenance and cure. See Hines v. J.A. LaPorte, Inc., 820 F.2d 1187 (11th Cir. 1987); Robinson v. Pocahontas, Inc., 477 F.2d 1048 (1st Cir. 1973). The majority of courts, however, do not allow punitive damages, other than attorneys' fees, in those circumstances. See Guevara v. Maritime Overseas Corp., 59 F.3d 1496, 1513 (5th Cir. 1995), cert. denied, 116 S. Ct. 706 (1996); Roy Al Boat Management Corp., 57 F.3d 1495, 1505 (9th Cir. 1995), cert. denied, 116 S. Ct. 708 (1996); Kraljic v. Berman Enters., Inc., 575 F.2d 412 (2d Cir. 1978).

IV.

As noted earlier, see supra note 1, O'Connell, in the instant action against IOMC, seeks compensatory damages, as well as punitive damages for IOMC's "arbitrary and willful" mishandling of his claim for maintenance and cure. O'Connell's claims, which are based on an injury sustained while employed as a crew member of a vessel owned by the United States (through MARAD), are governed by the Clarification Act, 50 U.S.C. app. 1291, which incorporates the Suits in Admiralty Act (SAA), 46 U.S.C. 741-52. See McMahon v. United States, 342 U.S. 25, 26 (1951); Gaynor v. Agwilines, Inc., 169 F.2d 612, 614-15 (3d Cir. 1948), aff'd sub nom., Fink v. Shepard S.S. Co., 337 U.S. 810 (1949).

The SAA and the Public Vessels Act ("PVA"), 46 U.S.C. 781-790, permit admiralty suits, including an action to enforce a seaman's entitlement to maintenance and cure, to be brought against the United States for causes of action arising out of the operation of vessels owned by, or operated for, the United States. Manuel v. United States, 50 F.3d 1253, 1255 (4th Cir. 1995). "Neither the SAA nor the PVA create causes of action against the United States. Instead, they act only as a waiver of the sovereign immunity of the United States in admiralty cases." Id. at 1255 n.1.

Section 745 of the SAA, the so-called exclusivity

provision, precludes recovery against an agent of the United States operating a government-owned vessel on any claim for which the SAA or the PVA provides a remedy against the federal government. Specifically, the exclusivity clause provides that "where a remedy is provided by [the SAA] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States . . . whose act or omission gave rise to the claim." 46 U.S.C. 745 (emphasis added).

O'Connell argues that his claim charging an arbitrary and willful failure to pay maintenance and cure in a timely manner, which, in essence, is a claim seeking punitive damages, is distinct from the underlying claim for maintenance and cure. Because punitive damages cannot be recovered from the United States, see Manuel, 50 F.3d at 1254, O'Connell reasons that the SAA does not provide a "remedy" and therefore such punitive-damage claims do not fall within the purview of the exclusivity provision of section 745.

There is a split of authority among the district courts on this issue. Three district court have held that section 745 does not preclude claims for arbitrary and willful failure to pay maintenance and cure. See Abogado v. International Marine Carriers, 890 F. Supp. 626, 632 (S.D. Tex. 1995) (holding that actions for willful and arbitrary denial of maintenance and cure "do not fall within the exclusivity clause of 745"); Henderson v. International Marine Carriers, 1990 A.M.C. 400, 402 (E.D. La. 1989) ("[P]laintiff's claim for willful and arbitrary failure to pay maintenance and cure must focus against the one who stopped the payments . . . . [The] SAA does not provide a remedy for this claim; therefore, the SAA exclusivity provision does not apply . . . ."), aff'd mem., 921 F.2d 275 (5th Cir. 1990); Shields v. United States, 662 F. Supp. 187, 190 (M.D. Fla. 1987) ("[S]uch arbitrary claims handling is an entirely different subject matter from the negligent conduct for which the SAA provides a remedy."). Several other district courts have reached the opposite conclusion. See Stewart v. United States, 903 F. Supp. 1540 (S.D. Ga. 1995); Smith v. Mar, Inc., 896 F. Supp. 75 (D.R.I. 1995); Fratus v. United States, 859 F. Supp. 991 (E.D. Va. 1994); Manuel v. United States, 846 F. Supp. 478 (E.D. Va. 1994), aff'd, 50 F.3d 1253 (4th Cir. 1995); Farnsworth v. Sea-Land Serv., Inc., 1989 WL 20544 (E.D. La. March 7, 1989), aff'd mem., 896 F.2d 552 (5th Cir.), cert. denied, 498 U.S. 880 (1990).

To date, the only published court of appeals decision which addresses this issue is the Fourth Circuit's affirmance of Manuel. In Manuel, Michael Manuel, a crew member aboard the M/V Cape Florida, a vessel owned by the United States and operated by International Marine Carriers, Inc. ("IMC"), sustained back injuries while lifting a water cooler cover. 50 F.3d at 1254. IMC paid maintenance and cure until it found Manuel fit for duty approximately one month later. Id. Manuel alleged that he continued to experience back pain and required continuing medical care after his employer determined he was fit for duty. Id. The district court granted summary judgment in favor of IMC and denied Manuel's motion for leave to amend his complaint to state

a claim for arbitrary and willful failure to pay maintenance and cure.  Id. at 1254-55.

On appeal, Manuel made the same argument raised by O'Connell in the present case:  a claim for arbitrary and willful failure to pay maintenance and cure when due does not fall within the exclusivity provision of the SAA because punitive damage claims do not lie against the United States.  The Fourth Circuit, in Manuel, acknowledged that a seaman could not bring a claim for punitive damages against the United States, but nevertheless concluded that section 745 precluded Manuel's action for arbitrary and willful failure to pay maintenance cure, reasoning that "[p]unitive damages [remedy] is merely an additional remedy in the seaman's maintenance and cure action."  Id. at 1260.

Manuel reviewed the Supreme Court precedents which ultimately gave rise to the 1950 Congressional amendment of section 745 of the SAA.  The Manuel court then reasoned:  The SAA requires a seaman to bring his action against the United States, and not its agent, to collect unpaid maintenance and cure.  Because the subject matter of the seaman's claim is maintenance and cure, any arbitrary and willful failure to pay that claim must deal with and come within the same subject matter.  Hence, it cannot be regarded as a cause of action separate from the simple failure to pay maintenance and cure benefits when due.  Such punitive damages can be considered no more than an additional remedy within the seaman's maintenance and cure action.  Thus the remedy provided by the SAA encompasses the seaman's remedy for arbitrary and willful failure to pay maintenance and cure benefits when due, and necessarily bars any such action against IOMC.

The Manuel court then went on to discuss the argument that the SAA does not provide a remedy for arbitrary and willful failure to pay maintenance and cure because the United States is not subject to punitive damages by reason of its sovereign immunity.  The Manuel court explained:

> [W]e reject [the] argument that the SAA does not "provide a remedy" for the arbitrary and willful failure to pay maintenance and cure. Manuel argues that the only remedy for the arbitrary and willful failure to pay maintenance and cure is punitive damages. Because the SAA has not waived the United States' sovereign immunity with respect to suits for punitive damages, Manuel argues that the SAA does not provide a remedy for the arbitrary and willful failure to pay maintenance and cure.  We conclude that Manuel's argument merely attempts to create a cause of action out of the punitive damages remedy.  Manuel's action against IMC is one to vindicate his entitlement to maintenance and cure resulting from his injury aboard the ship.  In resolving his maintenance and cure action against IMC, a court may grant punitive damages if it concludes that the

> maintenance and cure benefits were
> arbitrarily and willfully withheld.  The SAA,
> however, allows Manuel to vindicate his
> entitlement to maintenance and cure against
> the United States, but the sovereign immunity
> power of the United States limits his
> remedies.  Nonetheless, the SAA provides a
> remedy for Manuel's maintenance and cure
> claim.  Section 745 therefore bars Manuel's
> action against IMC.

Id. at 1260 n.6.

The reasoning of the Fourth Circuit in Manuel is persuasive, and we have no reluctance in following that rationale and disposition here.  We agree that an action for arbitrary denial of maintenance and cure benefits when due arises "by reason of the same subject matter" as the available claim against the United States for maintenance and cure.  We therefore hold that the exclusivity provision of the SAA bars O'Connell's claim for damages resulting from IOMC's arbitrary and willful failure to pay maintenance and cure when due.

V.

For the foregoing reasons, we will affirm the judgment of the district court, dated October 30, 1995, which dismissed O'Connell's complaint for lack of subject matter jurisdiction.