**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 22-3132 & 22-3228
_____

In re Complaint of ADRIAN AVENA, as Owner, and AA
COMMERCIAL, LLC, as Owner Pro Hac Vice, of the
Fishing Vessel CONCH'RD, for Exoneration from or
Limitation of Liability

KIMBERLY WOLFE, as Personal Representative of the
Estate of Aaron Greenberg, and on behalf of K.G., over
whom Kimberly Wolfe is the Appointed Co-Guardian, and
who is the Surviving Minor Child of the Decedent, Aaron
Greenberg

v.

DANIEL J. AVENA; UNITED STATES OF AMERICA;
CM HAMMAR AB; and REVERE SURVIVAL, INC.

Kimberly Wolfe,
Appellant in No. 22-3132
Adrian Avena, and AA Commercial,
Appellants in No. 22-3228
_____

On Appeal from the United States District Court
for the District of New Jersey

(D.C. No. 1:21-cv-00515)
District Judge: Honorable Karen M. Williams
_____


Submitted Under Third Circuit L.A.R. 34.1(a):
December 12, 2023
_____


Before: BIBAS, PORTER, and FREEMAN
*Circuit Judges*.


(Filed: February 6, 2024)


_____

Mary E. Reeves
Reeves McEwing LLP
1004 S. Front Street
Philadelphia, PA 19147

*Counsel for Plaintiff-Appellants in No. 22-3228.*

Paul T. Hofmann
Hofmann & Schweitzer LLP
1130 Route 202 South
Suite A7
Raritan, NJ 08869

*Counsel for Third-Party Appellant in No. 22-3132.*

Matthew R. Hyde
United States Department of Justice
Civil Division

Torts Branch Aviation, Space & Admiralty Litigation
175 N. Street NE
Suite 8.103
Washington, DC 20002

Bradley J. Preamble
United States Department of Justice Torts Branch,
Civil Division
P.O. Box 14271
Washington, DC 20044

*Counsel for the United States of America.*

Jamele A. Hamad
Marshall Dennehey Warner Coleman & Goggin
Casualty Department
21st Floor
88 Pine Street
Wall Street Plaza, 21st Floor
New York, NY 10005

*Counsel for Third-Party Appellee.*

Michael L. Testa
Testa Heck Testa & White
424 W Landis Avenue
Vineland, NJ 08360

*Counsel for Third-Party Appellee.*

_____

OPINION OF THE COURT
_____

**PORTER**, *Circuit Judge*.

Adrian Avena and Aaron Greenberg were fishing off the coast of New Jersey when their boat partially capsized. Tragically, Greenberg drowned before the U.S. Coast Guard or others arrived to their rescue. Greenberg's estate (Estate), Avena, and AA Commercial, LLC, assert maritime tort claims against the United States. They allege that the Coast Guard acted negligently in carrying out a search-and-rescue mission, and they assert that the government has waived its sovereign immunity under the Suits in Admiralty Act (SAA). The District Court found that it lacked subject-matter jurisdiction because the United States was immune from suit, and it dismissed the case with prejudice. We will affirm.

I

Avena owned a commercial fishing vessel named the Conch'rd. Through his company AA Commercial, Avena used the Conch'rd to fish for conch. In December 2020, Avena and his hired deckhand, Greenberg, were fishing 12 miles off the coast of Cape May, New Jersey, when the Conch'rd partially capsized at about 1:30 p.m. Avena and Greenberg were thrown into the freezing waters.

Aboard the Conch'rd was an Emergency Position Indicating Radio Beacon (EPIRB)—a device that transmits messages to satellites connected to a search-and-rescue tracking network. Per federal mandate, fishing operators must register their EPIRB with the National Oceanic and Atmospheric Administration and state on their registration the owner and name of the vessel. 47 C.F.R. § 80.1061(e)–(f).

4

Avena's EPIRB registration expired in 2017. And critically, the EPIRB information aboard the Conch'rd was registered to a different vessel that his father, Daniel, owned named the Gold Rush II.

At 2:07 p.m., the Coast Guard received a distress signal from the EPIRB on the Conch'rd. But because Avena's EPIRB-registered information was inaccurate, the signal informed the Coast Guard that the Gold Rush II was in distress. At 2:09 p.m., the Coast Guard broadcasted an Urgent Marine Information Broadcast (UMIB) to boats in the area stating that the Gold Rush II was in distress.

Also around 2:09 p.m., the Coast Guard called Daniel to ask about the signal. The parties agree that, during this call, Daniel informed the Coast Guard that the signal was not a false alarm and that the EPIRB was on Avena's vessel. But the parties dispute whether Daniel also corrected the Coast Guard's misunderstanding about the name of the vessel in distress. Following the phone call with Daniel, the Coast Guard kept broadcasting a UMIB stating that the Gold Rush II was in distress.

At 2:36 p.m., the Coast Guard called Daniel a second time. There is no dispute that this time Daniel told the Coast Guard that the name of Avena's vessel was the Conch'rd. The Coast Guard then promptly corrected its UMIB. At 2:48 p.m., the Coast Guard learned of the exact location of the EPIRB signal. It then called Daniel a final time to convey this information.

At 2:53 p.m., one of the Coast Guard's boats set off for the location of the signal. Soon after, the Coast Guard also sent

a "ready waiting" helicopter stationed in Atlantic City, New Jersey to the location of the signal. J.A. 95 ¶ 51. But it did not divert another helicopter that was in the air and not far from the location of the signal conducting unrelated law enforcement activities. Daniel also sent some of his acquaintances in a sport fishing boat to the location. That boat and the Coast Guard's helicopter arrived on the scene at 3:35 p.m. and 3:36 p.m., respectively. Daniel's acquaintances pulled Avena from the water, but Greenberg had drowned nearly 20 minutes earlier. The Coast Guard's vessel did not arrive until 4:00 p.m.

The Estate, Avena, and AA Commercial filed maritime tort claims against the United States,[1] alleging that it negligently undertook a search-and-rescue mission. First, they claim that "if th[e] Coast Guard . . . was told" during its first call with Daniel that the EPIRB "was emergency signaling . . .

---

[1] Avena and AA Commercial first filed a complaint under the Limitation of Liability Act seeking exoneration from or limitation of their liability for the death of Greenberg. The Estate then filed a claim against Avena and AA Commercial, alleging wrongful death under the Jones Act and general maritime law. Subsequently, the Estate filed a third-party complaint against Daniel and the United States. And Avena and AA Commercial filed a crossclaim against the United States, incorporating by reference the Estate's allegations against the United States. The Estate's, Avena's, and AA Commercial's allegations against the United States are the only ones at issue on appeal. So for simplicity, we will refer to the Estate, Avena, and AA Commercial as "Plaintiffs," and their complaints as a singular "third-party complaint."

[from] the Conch'rd and not the Gold Rush II," then the Coast Guard's failure to change the UMIB with updated information was negligent. J.A. 100–01 ¶ 75. Second, they allege that the Coast Guard was negligent in deploying its helicopter in Atlantic City instead of "direct[ing]" another helicopter already in the air carrying out unrelated "law enforcement activities." J.A. 101 ¶ 77; J.A. 93–94 ¶ 43.

The District Court granted the United States' Rule 12(b)(1) motion, finding that the District Court lacked subject-matter jurisdiction because the United States was immune from suit. The District Court determined that the Plaintiffs' claims fell outside the government's waiver of sovereign immunity in the SAA because they could not maintain a negligence action against a similarly situated private person. 46 U.S.C. § 30903(a).[2] The District Court then denied the Estate's motion for leave to amend its third-party complaint. Plaintiffs appealed.

II

Plaintiffs contend that the District Court had subject-matter jurisdiction over their third-party complaint against the United States under the SAA. Federal courts do not have

---

[2] The District Court also addressed the Estate's and Avena's invocation of the United States' waiver of its sovereign immunity in the Public Vessels Act (PVA). 46 U.S.C. § 31102(a) (waiving sovereign immunity for, inter alia, "damages caused by a public vessel of the United States"). But no party relies on the PVA on appeal, so we limit our discussion to the SAA.

subject-matter jurisdiction over suits against the United States unless Congress waived sovereign immunity. *United States v. Craig*, 694 F.3d 509, 511 (3d Cir. 2012). The District Court had the obligation and power to determine its subject-matter jurisdiction. *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012).

We have jurisdiction under 28 U.S.C. § 1292(a)(3) because the appeal is interlocutory and the District Court's order determined the rights and liabilities of parties to an admiralty case. *See Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 945 n.1 (3d Cir. 1985) (explaining that, under § 1292(a)(3), an appeal is interlocutory when "the rights and liabilities of *all* of the parties to th[e] [admiralty] litigation have not been determined"). "[Our] standard of review is plenary where the District Court dismisses for lack of subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Like the District Court, we construe the United States' Rule 12(b)(1) motion as a facial challenge to the District Court's subject-matter jurisdiction. *See id.* (explaining the differences between a facial and factual challenge). Thus, "we treat the allegations of the complaint as true and afford the plaintiff the favorable inferences to be drawn from the complaint." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001).

III

A

Through the SAA,[3] Congress waived the government's sovereign immunity for "civil action[s] in admiralty" so long as the action "could be maintained" against a "private person" in like circumstances. 46 U.S.C. § 30903(a). The SAA itself does not "create [a] cause[] of action against the United States." *O'Connell v. Interocean Mgmt. Corp.*, 90 F.3d 82, 85 (3d Cir. 1996) (internal quotation marks and quoted source omitted). Instead, "a plaintiff must show that the United States would be liable under maritime tort law." *Sagan v. United States*, 342 F.3d 493, 497–98 (6th Cir. 2003). "In the arena of tort law, general maritime law mirrors many principles of traditional negligence law." *Turner v. United States*, 736 F.3d 274, 280 (4th Cir. 2013). So when plaintiffs allege, as here, that the Coast Guard acted negligently, they must plead that it had an identifiable duty to act, breached that duty, and that the breach proximately harmed them. *See id.*; *see also Patentas v. United States*, 687 F.2d 707, 714 (3d Cir. 1982).

The Coast Guard does not have an affirmative duty to undertake any rescue operations. *See* 14 U.S.C. § 521 (authorizing the Coast Guard to conduct rescue operations, but not imposing any affirmative duty to do so). But "once the Coast Guard undertakes a rescue operation, it must act with reasonable care." *Sagan*, 342 F.3d at 498 (citing *Patentas*). "Its actions are judged according to the so-called 'Good Samaritan' doctrine." *Id.* Under that doctrine, the Coast Guard will be liable for any failure to exercise reasonable care if it "increase[d] the risk of [physical] harm" or "[physical] harm [was] suffered because of [the person in need of rescue's]

---

[3] 46 U.S.C. § 30901 *et seq.*

reliance upon the undertaking." *Patentas*, 687 F.2d at 714 (quoting Restatement (Second) of Torts § 323 (Am. L. Inst. 1965)). Plaintiffs rely solely on the "increased the risk of physical harm" theory of liability.

1

The District Court held that the Plaintiffs could not sustain a negligence action because the Coast Guard's two purported acts of negligence occurred *before* the Coast Guard began a search-and-rescue mission. So the Coast Guard could not have breached because it did not yet have a duty to act reasonably. We disagree.

We have not previously addressed when a search-and-rescue mission begins. But the Fourth Circuit has held that whether there was a search-and-rescue mission is a question of fact specific to each case. *Furka v. Great Lakes Dredge & Dock Co.*, 755 F.2d 1085, 1088 (4th Cir. 1985) ("Whether or not there was a rescue attempt is, of course, a question for the jury."). We agree with the Fourth Circuit. Whether and when the Coast Guard has initiated a search-and-rescue mission is fact laden and evades a rule as a matter of law. For example, the question may turn on facts such as the Coast Guard's representations to interested parties while the emergency unfolds, or the content of the Coast Guard's broadcasts sent out to nearby ships.

Therefore, on a motion to dismiss, the District Court erred in ruling that the Coast Guard did not have a duty to act reasonably before its alleged breach. On the United States' Rule 12(b)(1) facial challenge, we must construe the Plaintiffs' allegations as true and ask whether it was plausible that the

10

Coast Guard had a duty to act reasonably before it breached. *See NE Hub Partners*, 239 F.3d at 341 (stating that we must accept a complaint's allegations as true); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.") (internal quotation marks and quoted source omitted). And Plaintiffs' third-party complaint satisfies this standard. The Coast Guard's first alleged breach occurred between 2:09 p.m. and 2:36 p.m. when it broadcasted a UMIB containing the wrong information about the capsized vessel. It is plausible that the Coast Guard launched a search-and-rescue mission before that moment when it spoke to Daniel about the emergency around 2:09 p.m.

2

Although the Plaintiffs plausibly plead that the Coast Guard had a duty to act reasonably before its alleged breaches, Plaintiffs fail to properly plead how the Coast Guard's failure to exercise reasonable care "increase[d] the risk of [physical] harm" to Greenberg. *Patentas*, 687 F.2d at 714 (quoting Restatement (Second) of Torts § 323 (Am. L. Inst. 1965)). To meet this standard, Plaintiffs must show how "[t]he risk [wa]s increased over what it would have been had the defendant not engaged in the undertaking at all"—not "over what it would have been if the defendant had not been negligent." *Thames Shipyard & Repair Co. v. United States*, 350 F.3d 247, 261 (1st Cir. 2003) (internal quotation marks and quoted source omitted).

*Patentas* supports this understanding of the Good Samaritan doctrine. There, plaintiffs alleged that the Coast Guard acted negligently in inspecting a ship that exploded

11

hours later. *Patentas*, 687 F.2d at 709–10. We held the plaintiffs failed to show how the Coast Guard's conduct increased the risk of harm because its purported breach did not cause any "physical change to the environment or some other material alteration of circumstances." *Id.* at 717 (citation omitted). That is, had the Coast Guard done *nothing*, the ship still would have exploded. *See id.* at 716–17. So the Coast Guard could not have increased the risk of an explosion.

Accepting Plaintiffs' allegations as true, Plaintiffs fail to meet this standard. For the first breach, they allege that the Coast Guard negligently failed to update the UMIB with the correct name of the vessel after speaking with Daniel for the first time. They contend that, had the Coast Guard not erred, "[f]isherman working on the water near [the] Conch'rd's location . . . would have gone to the aid of the vessel[.]" J.A. 94 ¶ 49. This allegation fails as a matter of law because it compares the Coast Guard's breach to what would have happened if the Coast Guard had broadcasted the correct name of the vessel. Under the Good Samaritan doctrine, we are required to compare the Coast Guard's alleged breach to what would have happened if the Coast Guard did nothing. And had the Coast Guard done nothing, fisherman still would not have been looking for the Conch'rd.

Plaintiffs' second alleged breach also fails. They assert that there was "a Coast Guard helicopter . . . working over the Atlantic Ocean not far from the site of the capsized vessel performing law enforcement activities." J.A. 93 ¶ 43. They contend that the Coast Guard should have directed it to the scene because it would have arrived more quickly than the grounded helicopter. They also contend that the Coast Guard should have been ready to deploy unspecified "other assets"

12

promptly when it received the precise coordinates from the EPIRB. J.A. 101–02 ¶¶ 77–78. These allegations fail because had the Coast Guard not engaged in the undertaking at all, no helicopter or other assets would have arrived on the scene.

Thus, for either breach, the Coast Guard did not "increase the risk of physical harm" under the Good Samaritan doctrine. Accordingly, Plaintiffs could not sustain an action against a private person in like circumstances. So Plaintiffs' claims fall outside the government's waiver of sovereign immunity under the SAA, and the United States is immune from suit.[4]

B

The Estate moved for leave to amend its third-party complaint to cure any jurisdictional defects and attached a proposed Second Amended Complaint. But the proposed Second Amended Complaint demonstrates that amendment would be futile. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (stating that, once a party no longer has a right to amend as a matter of course, the court should freely give leave to amend unless it would be futile). That is because the Estate has not identified any set of facts that could demonstrate how the Coast Guard's purported breaches "increased the risk of

---

[4] The District Court determined that the United States was also immune from suit under the discretionary-function exception to the waiver of sovereign immunity. Because we agree with the District Court that Plaintiffs' claims fall outside the government's waiver of sovereign immunity in the SAA, we decline to address the discretionary-function exception.

physical harm" to Greenberg. The District Court thus properly denied the Estate's motion for leave to amend.

* * *

The District Court lacked subject-matter jurisdiction because the United States is immune from suit. We will therefore affirm the District Court's order dismissing the case against the United States with prejudice.