# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 24-2613

TAMMY KNIELING,
Appellant

v.

DON FUNG FOOK; WILLIAM POSTON

_____

Appeal from the District Court, D.V.I.
Magistrate Judge Ruth Miller, No. 3:22-cv-00036

Before: HARDIMAN, BIBAS, and PORTER, *Circuit Judges*
Argued: Dec. 9, 2025; Filed: Feb. 11, 2026

_____

OPINION OF THE COURT

BIBAS, *Circuit Judge*. Sailing is dangerous, so shipowners have long been responsible for their injured sailors' medical bills and living expenses. The duty to pay continues until shipowners can show that injured sailors have reached maximum medical improvement. While working as a first mate and chef, Tammy Knieling broke her finger. She recovered all her past medical expenses and then some, but also wants money for future treatments. Because it is unclear what future treatments she

may get to help her finger, she cannot recover more now, but may come back later. So we will AFFIRM the District Court's judgment.

## I.   SAILOR KNIELING RECOVERS FOR HER BROKEN FINGER

Tammy Knieling worked as a chef and deck hand for short-term boat charters. Captain Don Fung Fook hired her to work on William Poston's 51-foot power catamaran, the *M.B. Somewhere Hot*. The voyage started uneventfully. But then, injury struck. As the boat weathered rough seas, Fook ordered Knieling to let out the dinghy line. Knieling grabbed the line with her left hand. But before she could unwrap it from the cleat, her fingers got trapped between the taut line and the metal post. Though she tugged on the line with her right hand to free her left, the pressure was too great. So she screamed, "stop the boat, stop the boat. I'm hurt." App. 704.

Fook cut the engines. A medical student aboard the boat grabbed a first-aid kit and wrapped Knieling's left middle finger. With the help of Fook and guests, she was able to keep up with her duties and did not miss any days' work. Back on shore, she was diagnosed with a broken and dislocated finger. While getting treated ashore, she continued to work. Eventually, her fracture healed and her grip strength recovered. But her left middle finger has 20% less range of motion, and she will never get it all back.

Dr. Fletcher, a plastic and hand surgeon, recommended exercises and an injection to help with range of motion,

possibly followed by surgery as a last resort. He could not say whether she had reached maximum medical improvement.

Knieling sued Fook and Poston. The parties consented to a bench trial before a magistrate judge, who issued a split decision. She dismissed the claims against Fook. Yet she held Poston liable under the Jones Act for negligence and awarded Knieling past medical expenses plus interest, as well as past and future pain and suffering. She also found Poston liable for medical expenses (cure) under admiralty law, but Knieling had recovered these under the Jones Act. She did not award Knieling any living expenses (maintenance) under admiralty law, punitive damages, or attorney's fees. We review the District Court's factual findings for clear error, its legal conclusions de novo, and its ultimate attorney's-fee award for abuse of discretion. *Deisler v. McCormack Aggregates, Co.*, 54 F.3d 1074, 1079, 1087 (3d Cir. 1995).

## II. KNIELING GETS NO MORE MAINTENANCE & CURE NOW

Since the Middle Ages, shipowners have been obligated to care for their injured sailors. 1 Robert Force & Martin J. Norris, *The Law of Seamen* § 26:6, at 1099 (5th ed. 2025). So while sailors are ashore recovering from injury or illness, shipowners must cover their medical (cure) and living (maintenance) expenses. *O'Connell v. Interocean Mgmt. Corp.*, 90 F.3d 82, 84 (3d Cir. 1996). Owners are strictly liable for them so long as the sailor (1) was working as a seaman, (2) was injured or grew ill while serving the vessel, and (3) lost wages or incurred expenses from treating the injury or illness. 1 Thomas J. Schoenbaum, *Admiralty & Maritime Law* § 6:28 (7th ed. 2025).

3

Once the sailor shows a right to maintenance and cure, the owner must keep paying her those expenses "until the seaman has reached the point of maximum cure, that is until the seaman is cured or his condition is diagnosed as permanent and incurable." *O'Connell*, 90 F.3d at 84 (internal quotation marks omitted).

As for maintenance, Knieling had no need for it. Knieling did not take time ashore to recover from her injury. She continued to serve as chef and mate, never missing a paycheck. Knieling protests that she went back to work because she needed the money. True, returning to work because of coercion or "financial necessity" does not bar maintenance. *Yates v. Dann*, 223 F.2d 64, 67 (3d Cir. 1955). But as the District Court found, "there is no indication that she ever gave any hint of wanting to take time off to heal." App. 33. "Rather, plaintiff made it clear that she wanted to keep going, and that she did not want to miss any of the scheduled charters." *Id.* Because she never had to take time off, she incurred no living expenses and lost no wages as a result of her injury, and thus had no right to maintenance.

And as for cure, though Knieling has recovered for her past medical expenses, she also seeks payment for future ones. Sailors have a right to cure for medical expenses that "may be needful in the immediate future" and are "of a kind and for a period which can be definitely ascertained." *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 531–32 (1938).

The District Court denied future cure because Knieling's request was too speculative. We agree. Though Dr. Fletcher

4

recommended some possible treatments, he also said he "would need to see [her] again to determine whether the treatments he previously recommended are still medically necessary." App. 35. His testimony was "speculative as to whether additional treatment could be curative." App. 33 n.14. What is more, Knieling gave no evidence that she intended to schedule further treatment. Future cure cannot be "based on a hypothetical future treatment that may or may not be medically necessary and that the plaintiff may never receive." App. 35 (citing *Calmar S.S.*, 303 U.S. at 531–32).

At the same time, the District Court's ruling does not close the door on possible future cure. To end Knieling's entitlement to cure, Poston had the burden to prove that she had reached maximum medical improvement. *Smith v. Del. Bay Launch Serv., Inc.*, 972 F. Supp. 836, 848 (D. Del. 1997); *Aadland v. Boat Santa Rita II, Inc.*, 42 F.4th 34, 53 (1st Cir. 2022). That is mainly a medical question. 1 Schoenbaum § 6:33. We resolve doubts in favor of the seaman. *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962).

As the District Court explained, "there is no clear finding of MMI [maximum medical improvement]—or the absence of MMI—on this record." App. 32. Dr. Fletcher did not opine whether Knieling had recovered as much as she will. He did say that her finger will never be the same. But he suggested some therapies that could help. And surgery remained an option. Given those doubts, Poston failed to carry his burden to show that her finger cannot improve.

Resisting this conclusion, Poston relies on a single sentence in the District Court's opinion: "The Court concludes from the bulk of the evidence that further treatment would be palliative as opposed to curative." App. 32–33. That sentence is, by its own terms, limited to the evidence in this record. And it is sandwiched between two other sentences that highlight the absence of proof: "There is no medical evidence or testimony indicating plaintiff reached MMI" and "Dr. Fletcher's testimony is speculative as to whether additional treatment could be curative." App. 32, 33 n.14. So the lone sentence cannot bear the weight that Poston puts on it.

Read as a whole, the District Court's opinion is consistent with the burden of proof: Without enough evidence of maximum medical improvement, Poston has not carried his burden. If Knieling "receives future treatment of a curative nature, she may … recover in a new proceeding the amount expended for such treatment and for maintenance while receiving it." *Farrell v. United States*, 336 U.S. 511, 519 (1949) (cleaned up).

### III. KNIELING DOES NOT GET PUNITIVE DAMAGES, ATTORNEY'S FEES, OR COSTS

Knieling also seeks punitive damages, attorney's fees, and costs. She says that by refusing to pay her medical bills, Fook and Poston callously disregarded her rights. To recover these amounts, she must show that they acted in "bad faith," with "willful and wanton disregard of the maintenance and cure obligation." *Deisler*, 54 F.3d at 1087 (first quotation); *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 424 (2009) (second quotation).

6

Neither Fook nor Poston acted in bad faith. True, Poston delayed paying some medical bills, but that was because the parties had trouble determining the exact amount owed. And when she asked for more, he was willing to pay up. Knieling was partly responsible for the fact that Poston never paid those additional expenses because she never responded to Poston's offer and did not claim for cure in her first complaint. Plus, Fook and Poston had a good-faith basis to believe that she had reached maximum medical improvement based on her working aboard another boat. *Gooden v. Sinclair Refin. Co.*, 378 F.2d 576, 579 (3d Cir. 1967). Though that defense failed at trial, it rested on a colorable legal basis. Poston's delay was not callous or recalcitrant and did not reflect wanton or intentional disregard for Knieling's rights. *Vaughan*, 369 U.S. at 530–31; *Del. River & Bay Auth. v. Kopacz*, 584 F.3d 622, 635 (3d Cir. 2009). So the District Court properly denied punitive damages, attorney's fees, and costs.

\* \* \* \* \*

Knieling's injury was serious, but not debilitating. Though she properly recovered medical expenses and other damages, she had no right to maintenance, punitive damages, attorney's fees, or costs. If she needs future non-palliative medical care, she may bring another suit for future cure. We will thus AFFIRM.

7

*Counsel for Appellant*
Terry P. Roberts      [Argued]
FISCHER REDAVID

*Counsel for Appellees*
John P. Walsh          [Argued]
JP WALSH LEGAL FIRM

Matthew J. Duensing
Joseph Sauerwein
DUENSING & CASNER